570 A.2d 154 (1989)
In re J.R.
Nos. 86-595, 88-277.
Supreme Court of Vermont.
November 3, 1989.
*155 Jeffrey L. Amestoy, Atty. Gen., Montpelier, and Michael O. Duane, Asst. Atty. Gen., and Barbara L. Crippen, Sp. Asst. Atty. Gen., Waterbury, for plaintiff-appellee.
Ellen M. Coogan, Burlington, for defendant-appellant C.R.
Walter M. Morris, Jr., Defender Gen., and Henry Hinton, Appellate Defender, Montpelier, for defendant-appellant R.R.
Before ALLEN, C.J., PECK and DOOLEY, JJ., BARNEY, C.J. (Ret.), and SPRINGER, District Judge (Ret.), Specially Assigned.
DOOLEY, Justice.
Two juvenile cases were consolidated for purposes of appeal. In the first case (No. 86-595), the parents of J.R. appeal from the November 1986 order of the district court that placed custody and guardianship of J.R. with the Department of Social and Rehabilitation Services (SRS) and failed to grant either parent rights of visitation. In the second case, the parents appeal the April 29, 1988 order of the district court that granted the motion of J.R. and SRS to terminate the residual parental rights of both parents. The primary appellant in both cases is C.R., mother of J.R. The father, R.R., failed to file a brief in this Court although by letter he indicated that he adopted some of C.R.'s arguments and supported the others.
C.R. makes six arguments on appeal. In No. 86-595, C.R. argues: (1) that the dispositional hearing was not held in a timely fashion as required by 33 V.S.A. § 654(b) and that therefore the district court erred in not dismissing the case; (2) that the district court's findings are not supported by clear and convincing evidence; and (3) that the district court committed error in failing to allow C.R. to offer evidence on the issue of visitation before denying her the right to visit with her daughter. We hold that the time frame of 33 V.S.A. § 654(b) is not jurisdictional and that therefore dismissal of the cause was not mandated. We hold further that the district court's findings were supported by clear *156 and convincing evidence. We also hold it was error to deny C.R. the opportunity to present expert testimony on the issue of visitation, but we rule that this question is moot.
In No. 88-277, she argues: (1) that the district court did not have the power to terminate residual parental rights in a dispositional review hearing governed by 33 V.S.A. § 658; (2) authority for termination under an alternative statute, 33 V.S.A. § 659, cannot be present because no petition was filed as mandated by that section; and (3) assuming that the district court had the power to terminate residual parental rights, the court did not have before it clear and convincing evidence to support its decision. We hold that the district court proceeded correctly under § 658 and that it had sufficient evidence upon which to base its decision. We therefore do not reach C.R.'s second argument.
In No. 86-595, we affirm the district court's November 26, 1986, order on the issue of custody. In No. 88-277, we affirm the termination of residual parental rights as to both parents.
The basic facts underlying these cases are as follows. J.R. was sexually abused by her father on a nearly daily basis from the age of five until the age of nine. She told her mother about the abuse in understandable terms, but her mother did nothing to remedy the situation. R.R. denies that he ever abused his daughter. C.R. refuses to choose between believing her daughter or R.R. This lack of support from C.R. contributed to J.R.'s serious childhood depression and her feelings of loneliness and fear of others.
J.R. was taken into State custody in 1981. She has resided continuously in the same foster home since 1982. J.R. has had no contact with her natural father aside from occasionally seeing him at court or administrative hearings. J.R. and C.R. have had no meaningful contact since, at the latest, 1984. C.R. continues to love and wishes to visit with her daughter. J.R. has expressed a clear desire to not associate with either parent and has generally opposed visitation by the parents. The few encounters between J.R. and C.R. have been hostile and counterproductive. The parents have consistently taken the position that J.R.'s attitude toward them has been induced and encouraged by SRS and the various professionals who have been involved in the case. In the parents' view, she has been "brainwashed."
J.R. is now seventeen years old. She would like to be adopted by her foster parents before she turns eighteen.
We have addressed issues involving the most fundamental aspects of J.R.'s life three times before.[*] In December, 1981 the district court adjudicated J.R., then nine years old, a child in need of supervision (CHINS). In In re M.W.R. & J.L.R., 143 Vt. 6, 10, 458 A.2d 1132, 1134 (1983), we reversed the district court's order because the court relied upon unsworn deposition testimony in reaching its decision. Following the decision, the district court again found that J.R. was in need of care and supervision and on May 11, 1983 transferred legal custody of J.R. to SRS. The district court reviewed its order on May 21, 1984 and continued it. The district court also denied the parents' motion to compel SRS to permit them to visit with J.R. In In re J.R., 147 Vt. 7, 11, 508 A.2d 719, 721 (1986) (hereinafter J.R. I), we reviewed this denial and held that the trial court had to make specific findings of fact to support its conclusion that the parents had not been unreasonably denied visitation rights. We remanded the case for a new hearing.
In In re J.R., 147 Vt. 34, 36, 509 A.2d 1012, 1014 (1986) (hereinafter J.R. II), we affirmed the CHINS adjudication but held that findings of fact "are a prerequisite to a disposition order removing a child from its parents." Since the district court failed to make findings of fact to support its disposition order, we remanded the case, *157 again, for a new disposition hearing. Custody was to remain with SRS during the pendency of the appeal.

I. No. 86-595
Following the March 28, 1986 reversal and remand of the disposition order in J.R. II, the parents moved for temporary custody of J.R. and, in the alternative, for a visitation order. These motions led to the appointment of a guardian ad litem to mediate a visitation plan, and hearings were held on the temporary visitation issue. Following these hearings, the court set a disposition hearing on July 9, 1986. C.R. responded, in part, by moving to dismiss the case because the disposition hearing was untimely under 33 V.S.A. § 654(b).
The court denied the motion and went forward with the hearing. After the hearing, the court issued a twenty-six page opinion and order based on fifty-four specific findings of fact. The order awarded custody of J.R. to SRS and directed that J.R. not be compelled to visit with her parents against her will.
The denial of the motion to dismiss the disposition case leads to C.R.'s first issue on appeal in the disposition case.
The statute on which C.R. relies provides in pertinent part:
(b) ... In the case of a finding that a child is in need of care or supervision the continuance of the hearing may be held immediately upon that finding but in no event shall the disposition hearing be held later than thirty days after the finding....
33 V.S.A. § 654(b). The delay of which C.R. complained was that between the remand in J.R. II and the disposition hearing. Both parties agree that this period exceeded thirty days.
The trial court denied the motion to dismiss stating:
There was an immediate concern that was presented by both parents of wanting to initiate visitation right away. Given the remand, there was serious concern as to whether the juvenile would obey any order of the court and whether the juvenile would even consent to seeing the parents under any circumstances. It was with agreement of the parties that the court suggested that we try to work out interim visitation by the appointment of [a guardian ad litem] to work with the child to build that type of a temporary visitation situation. [W]e consumed a substantial period of time in attempting to do that. My primary concern was, and I like to think that is the primary concern of those who were working on it at the time, was to ... establish contact between the parents notwithstanding that a disposition down the road could conceivably result in custody with SRS.
... I think that if we elevate the form of a time frame over the substance of what we are doing here, it would not be consistent with what the juvenile statutes have in mind and what the Supreme Court has in mind. [W]hile admittedly we may have deferred immediately convening a disposition hearing to make an attempt at family reunification, I think that had it been successful, it would have been more a preferable outcome than simply scheduling a hearing for a full blown disposition hearing within 30 days or otherwise.
We agree with the trial court that the "delay" between the remand and the disposition hearing is not cause to dismiss the CHINS case. We do not believe that the time limit in § 654(b) is jurisdictional so that failure to meet the time limit, for whatever reason, must result in dismissal of the juvenile case. Generally, we will not imply such a consequence into a legislatively established time limitthat is, we require that the Legislature specify such an extreme consequence. See In re Mullestein, 148 Vt. 170, 173-74, 531 A.2d 890, 892-93 (1987). In the early case of Warner v. Mower, 11 Vt. 385, 394 (1839), this Court announced the general rule that where the statute is merely "directory" that is, directs the manner of doing something, but is not the essence of the authority for doing itcompliance with the manner is not considered essential to the validity of the proceeding. There is nothing in the statute providing authority for the disposition *158 order, 33 V.S.A. § 656, to suggest that the order is valid only if the hearing is held within the time limit specified in § 654(b). Thus, we find the time limit to be only "directory" so that noncompliance with it does not result in voiding either the disposition order or the CHINS adjudication. See also In re R.B., 152 Vt. ___, ___, 566 A.2d 1310, 1314 (1989) (dismissal not appropriate remedy for failure to hold a disposition review hearing; "main goal is to protect the interests of the child").
Although we hold that the time limit of § 654(b) is only directory, we must ensure that the parents' rights are protected by speedy disposition hearings. In this case, we believe that the district court acted reasonably. The real delay in this case was between the CHINS adjudication, originally made in 1981, and the disposition order of November 26, 1986. This delay was caused by the litigation and appeals. The delay after remand was minor compared to the rest of the delay in this case.
Moreover, the court acted diligently to resolve the disputes between the parties after the remand. As the court noted in its ruling on the motion to dismiss, the appointment of the guardian ad litem was seen as a way to start a reconciliation between J.R. and C.R. In reality, the juvenile court began the process of coming to an appropriate, workable disposition order within thirty days after the remand although the short-term purpose of the hearing was to establish temporary visitation. A holding that there was unreasonable delay in hearing the disposition case would elevate form over substance.
C.R.'s second argument is that the evidence and the trial court's findings do not support by clear and convincing evidence that C.R. was unfit and demonstrably incapable of providing an appropriate home for J.R. and that J.R.'s welfare required separation of her from her parents. We conclude that the trial court's findings of fact and conclusions of law are supported by the record by clear and convincing evidence.
The juvenile court made fifty-four findings, detailing the relationship between J.R. and her parents. The findings set forth the various attempts to facilitate contact between J.R. and her mother in particular. These attempts all failed because of J.R.'s opposition to the contacts based on the failure of C.R. to acknowledge the sexual abuse by R.R. The court adopted the clear and convincing evidence standard and found that the parents were unfit and incapable of providing an appropriate home to J.R.
The juvenile court used the proper standard of proof and properly defined SRS's burden to obtain custody of J.R. at the disposition hearing. See, e.g., In re M.B., 147 Vt. 41, 45, 509 A.2d 1014, 1017 (1986). Thus, C.R.'s claims must be that the evidence does not support the findings or the findings do not support the conclusions. She bases these claims on her view that the evidence was stale, describing the situation in 1982 and 1984.
The trial court's findings must stand unless clearly erroneous. See In re C.L. & H.L., 151 Vt. ___, ___, 563 A.2d 241, 244 (1989). The conclusions in turn must be affirmed if supported by the findings. We find that the findings and conclusions are adequately supported.
The lengthy litigation in this case required the court to go back into the history to describe the relationship between J.R. and her parents, its evolution and the attempts to improve it. The evidence supported the court's conclusion that the relationship had deteriorated and showed that C.R. was not fit to have custody of J.R. and could not provide a proper home at the time of the disposition hearing. The court could properly conclude on the evidence that C.R.'s continued failure to believe J.R.'s allegation of sexual abuse by her father and to support J.R. made reunification impossible. It could also conclude, contrary to the parents' claim, that the animosity between J.R. and her parents was not caused by the intervention of SRS or the various professionals that had been involved in the case, but instead was caused by the parents' conduct. There is no error *159 in the disposition order placing custody of J.R. with SRS.
C.R.'s final argument is that she was denied the right to present evidence on the issue of visitation with J.R. in violation of her due process rights under the United States and the Vermont Constitutions. The record shows that the trial court initially granted the parents' motion to bifurcate the disposition proceedings. The parents specifically stated on the record at the hearing that they had an expert they would call at a later time if custody was awarded to SRS. The court then agreed to proceed first to determine the issue of custody and then to determine the issue of visitation. The court specifically stated that if any party wanted to present additional evidence on visitation the court would hold a further hearing on that issue. The court also stated that it would take into consideration evidence going to the issue of visitation at the first hearing, but would defer the determination of the visitation issue until after deciding the issue of custody.
Despite the court's bifurcation determination, and the reliance of the parents upon it, the trial court dealt with visitation in its disposition order stating that "[a]lthough the parents requested that the issues of disposition and visitation be tried separately, testimony on both were received during the three day hearing. The issue of visitation is properly before this court." The court went on to hold that J.R. would not be forced to have visitation with her parents and to order that SRS "shall determine when unforced visitation with [J.R.'s]... parents is appropriate. Visitation shall not be compelled."
The trial court was correct that there was extensive evidence on visitation. The trial court's conclusion that visitation should not be forced is supported by the record by clear and convincing evidence. J.R. testified in clear and forceful terms that it was her wishnot a wish imposed on her by professionalsthat she not be forced to visit with her parents. Both the psychologist who had treated J.R. for a number of years and the professional mediator who was appointed as a guardian ad litem for J.R. following the remand from this Court testified that J.R. should not be compelled to visit with her parents against her will. Despite this support for the court's action, we must hold that the trial court committed error in not allowing additional evidence on visitation before ruling on this hotly contested issue.
The court exercised its authority over the procedure and evidence to bifurcate the hearing to reach visitation only if it awarded custody to SRS. Although the parents could offer evidence on visitation during the initial hearings, the court's ruling gave them the right to wait and put on their evidence at a later hearing. They relied upon this ruling to their detrimentthe court denied visitation without the parents' evidence.
Ordinarily, we would reverse the visitation order because of the procedural violation, much as we did in J.R. I. See 147 Vt. at 11, 508 A.2d at 721. However, in this case, we must confront whether the issue is moot in view of the later order of the juvenile court terminating all residual parental rights. The right of a parent to visit a child in the custody of SRS is a residual parental right. See 33 V.S.A. § 632(a)(16). The order in No. 88-277 terminating such rights and transferring them to SRS necessarily took away the right to visitation so that a new hearing on visitation would be of no use. Thus, if the termination order in No. 88-277 is affirmed, the visitation issue is no longer "live." See In re S.H., 141 Vt. 278, 280, 448 A.2d 148, 149 (1982). We defer our final resolution of the visitation issue to our disposition of No. 88-277, infra.

II. No. 88-277
This proceeding began as an eighteen month review of the 1986 disposition order as required by 33 V.S.A. § 658(a). As the party having custody of J.R., SRS filed a report recommending the continuation of custody with SRS. The attorney and the guardian ad litem for J.R. objected and orally requested an order terminating the residual parental rights of C.R. and R.R. Thereafter, SRS joined in the request orally *160 and by a letter to the court. A supplementary disposition report, dated January 25, 1988, supported the new SRS position.
The court resumed the review hearing in February of 1988. Based on extensive findings, the court found that the best interests of J.R. required that the parental rights and responsibilities of her parents be terminated. It ordered the transfer of parental rights and responsibilities to SRS without limitation as to adoption.
C.R.'s first argument is that the district court cannot terminate residual parental rights in a review proceeding held under 33 V.S.A. § 658. That section states in pertinent part:
(a) Unless otherwise specified therein an order under the authority of this chapter transferring legal custody, or guardianship over the person or residual parental rights and responsibilities of a child to an individual, agency, or institution shall be for an indeterminate period, and provided further that, every order transferring legal custody or guardianship over the person shall be reviewed one and one-half years from the date entered and each one and one-half years thereafter. In no event shall any such order remain in force or effect beyond the minority of the child.
...
(d) The review [hearing before the juvenile court under 33 V.S.A. § 658(c)] shall determine whether
(1) the child or custody thereof shall be returned to his parents or other family members;
(2) the child shall be continued in the custody of the commissioner for a specified period;
(3) the child, because of exceptional circumstances, shall remain in the custody of the commissioner on a long term basis as a permanent plan or with a goal of independent living;
(4) the child should be considered for adoption or legal guardianship.
The parents argue that § 658 limits the court to the four options listed in subsection (d) and that none of the options allow the district court to terminate residual parental rights in order that the child can be legally adopted. We disagree.
In interpreting legislation, this Court will give statutes a "reasonable construction" and one that will "`not ... render the act ineffective or lead to irrational consequences.'" In re G.F., 142 Vt. 273, 279, 455 A.2d 805, 808 (1982) (quoting Audette v. Greer, 134 Vt. 300, 302, 360 A.2d 66, 68 (1976)). We will also "enforce the statute according to its obvious terms." Id. 142 Vt. at 280, 455 A.2d at 809. We must read statutes covering the same subject area "in pari materia." See Wolfe v. Yudichak, ___ Vt. ___, ___, 571 A.2d 592, 595 (1989).
Based on these canons of statutory construction, we hold that the court can consider termination of residual parental rights at a § 658 review proceeding. The purpose of the § 658 hearing is to review, and if appropriate amend, the disposition order entered under § 656(a). Since the court can terminate residual parental rights and responsibilities in an initial disposition order, 33 V.S.A. § 656(a)(3), there is no clear reason to deny this power at the time of review of the disposition hearing.
We think the power to terminate residual parental rights is implied in the power specified in § 658(d)(4) to consider the child for adoption. The power to prevent an adoption by refusing consent is probably the most important residual right remaining in a parent after custody is transferred to SRS. See 33 V.S.A. § 632(a)(16) (definition of residual rights and responsibilities). Thus, without a termination of residual parental rights, there can be no adoption.
Finally, we note that the Legislature specifically provided that the standards for termination of residual parental rights contained in 33 V.S.A. § 667 apply to § 658 review proceedings. The inclusion of § 658 proceedings makes sense only if such proceedings can consider termination of residual parental rights.
In this case, the juvenile court took the motion to terminate residual parental rights under advisement and scheduled a hearing for about five weeks later. All parties to the action were present at the *161 January hearing and were informed that the termination of residual parental rights would be considered at the February hearing. At the hearing, all parties were afforded an opportunity to present evidence, cross-examine witnesses and make arguments before the court. Both parents participated and vigorously opposed termination of their residual parental rights. There is no error in the procedure used by the court to arrive at its termination order.
C.R.'s second argument deals with § 659 as an alternative source of authority for the court's termination order. We need not address this argument since we have found that the order can be grounded on § 658.
C.R.'s third argument is that the evidence established that C.R. was capable of providing for J.R.'s physical needs and had an appropriate home. She concludes that the only evidence supporting termination of residual parental rights was based on the passage of time and the stagnation of family ties. Thus, she argues that there were insufficient grounds to terminate parental rights.
We have stated on numerous occasions that the State's power to terminate parental rights is "awesome" and "should be used with extreme care and only as a last resort." In re D.R., 136 Vt. 478, 480, 392 A.2d 951, 952 (1978). The standards the court must consider in exercising its power are set forth in 33 V.S.A. § 667. That statute provides:
At the time of the review under section 658 ... the court shall consider the best interests of the child in accordance with the following:
(1) The interaction and interrelationship of the child with his natural parents [and] his foster parents ...;
(2) The child's adjustment to his home, school, and community;
(3) The likelihood that the natural parent will be able to resume his parental duties within a reasonable period of time; and
(4) Whether the natural parent has played and continues to play a constructive role, including personal contact and demonstrated love and affection, in the child's welfare.
We note first that our cases require the court to go through a two-step process in post-disposition termination of parental rights cases. The first step is to find a "substantial change in material circumstances." See, e.g., In re C.W., 148 Vt. 282, 283, 532 A.2d 566, 568 (1987). This step is specifically required by § 659(a) in modification petition cases. We believe that it is also required by necessary implication in § 658 cases. We note that our cases specifically allow this element to be shown by the passage of time with no improvement in parental capacity to care properly for the childoften called "stagnation." See In re C.L. & H.L., 151 Vt. at ___, 563 A.2d at 244.
The second step is to find whether the best interest of the child, according to the criteria set forth in § 667, requires termination of parental rights and responsibilities. See id. at ___, 563 A.2d at 247-48. In this step, the most important issue is whether the parent "will be able to resume his parental duties within a reasonable period of time." 33 V.S.A. § 667(3). See In re J.J., 143 Vt. 1, 6, 458 A.2d 1129, 1131 (1983).
It is clear that changed circumstances as defined in our precedents are present in this case. The trial court specifically found changed circumstances in the stagnation that had occurred since the disposition order. Adding to the stagnation, the parents, particularly C.R., took none of the steps set forth in the case plan that were necessary for reunification. C.R. refused to go to counseling at the regional mental health center because she felt it was an agent of SRS. As a result, she failed to confront and deal with her responses to the sexual abuse of J.R. Moreover, she refused to allow home visits by SRS. Thus, the court properly found that "[d]espite reasonable efforts by SRS to communicate and cooperate with ... [C.R. and R.R.], the parents' position continues to be an unwillingness to take any steps toward meeting ... [J.R.'s] emotional needs."
*162 On the second step, determining the best interest of the child under the standards set forth in § 667, the court made findings on each issue. On the critical question of when the parents could assume parental responsibilities, the court found that there was "no likelihood that either parent" could do so within a reasonable period of time. As to C.R., the court based this conclusion on her unwillingness to accept J.R.'s version of R.R.'s behavior. For this reason, the court found that C.R. cannot address the "fundamental psychological issues" or meet J.R.'s "emotional needs." Since J.R. no longer accepts C.R. as her mother, the court found no likelihood that C.R. could resume her parental duties within a reasonable period of time. Based on all the findings, the court found that it was in the best interests of J.R. that parental rights and responsibilities be terminated.
C.R. argues against the court's findings by characterizing them as based exclusively on the passage of time without contact and the lack of bonding between J.R. and C.R. We need not get into the precedents on which she relies in making these arguments because the characterization does not fit this case. The fundamental grounds for termination in this case are the sexual abuse of J.R., C.R.'s failure to assist her when she was victimized and J.R.'s reaction to her parents' conduct. The court's findings are amply supported by the record, as is its conclusion that J.R.'s best interests are served by termination.
There remains only to consider the effect of the visitation issue error in 86-595 on the termination in this case. This case is comparable to In re C.W., 148 Vt. at 286, 532 A.2d at 570, where the mother argued that the court improperly relied on the denial of visitation and its consequences in ordering a termination of parental rights. We agreed that such reliance would be improper but affirmed because of the other evidence in the case bearing on the fourth criterion in § 667, whether the mother "has played and continues to play a constructive role ... in the child's welfare."
Following the direction of C.W., we likewise found in this case that the criterion supports termination apart from the visitation error. C.R. has remained adamant in her refusal to credit J.R.'s allegations of sexual abuse by R.R. and to blame the break-up of the family on SRS. She refused to implement those parts of the case plan that would address those issues. Even if SRS forced visitation against J.R.'s will, there is no evidence to suggest that it could lead to reconciliation without a fundamental change in C.R.'s attitude and conduct. Visitation alone would not fundamentally alter the situation.
J.R. is now seventeen years old. After extensive litigation, including now four decisions in this Court, the fundamental differences between J.R. and her parents have not been resolved or even reduced. Another round of hearings will accomplish nothing except to place a further impediment in the life path J.R. has herself chosen.
Affirmed.
NOTES
[*] In addition, a related dispute was before this Court in In re J.R. & M.W.R., 146 Vt. 185, 499 A.2d 1155 (1985), where a deputy state's attorney, who was sued in federal court by J.R.'s parents for an alleged violation of their civil rights, sought access to J.R.'s juvenile records to prepare a defense. Access was denied by this Court. See id. at 189, 499 A.2d at 1157.