572 A.2d 884 (1990)
In re H.A., Juvenile.
No. 88-199.
Supreme Court of Vermont.
January 26, 1990.
*885 Jeffrey L. Amestoy, Atty. Gen., Montpelier, Barbara L. Crippen, Sp. Asst. Atty. Gen., and Michael O. Duane, Asst. Atty. Gen., Waterbury, for plaintiff-appellee.
Jean Anne Kiewel of Bech and Associates, Hartland, for defendant-appellee, juvenile.
Charles S. Martin and Catherine Gjessing, Law Clerk (on the Brief), of Martin & Paolini, Barre, for defendant-appellant, mother.
Michael Rose, St. Albans, for defendant-appellant, father.
Before ALLEN, C.J., PECK, GIBSON and DOOLEY, JJ., and BARNEY, C.J. (Ret.), Specially Assigned.
DOOLEY, Justice.
The parents of H.A., an eleven-year-old girl, individually appeal the March 16, 1988 order of the district court terminating the residual parental rights of both parents. We affirm.
The history of this case dates back to March 12, 1984, when the state's attorney first filed a petition pursuant to 33 V.S.A. § 645(a) alleging that H.A. was a child in need of care and supervision (CHINS). A merits hearing was held on March 23, 1984, and the court concluded, based on a stipulation by the parties, that H.A. was a CHINS. Following the disposition hearing on May 2, 1984, the court transferred legal custody of the child to the Department of Social and Rehabilitation Services (SRS) and left residual parental rights and responsibilities with the parents. SRS then placed H.A. in a foster home. The mother appealed the disposition order as it applied to her, claiming that the order was not supported by the court's findings of fact. We affirmed in In re H.A., 148 Vt. 106, 528 A.2d 756 (1987).
The court held an eighteen-month review of the 1984 disposition order and issued its order on February 3, 1986. Although SRS had recommended that H.A. be returned to her parents, the court concluded that "her relationship with her parents and brothers is so fragile that a return of her custody to her parents would create more stress than the family could bear." The court further determined that SRS's plan to return the child to her parents failed to adequately address the father's use of alcohol and his *886 possible involvement in sexual abuse of the child. Hence, the court ordered that legal custody of H.A. remain with SRS and that residual parental rights remain with the parents.
Prior to a second disposition review hearing, SRS issued a "Plan Review" on February 27, 1987. The plan review stated that SRS's goal concerning the juvenile was long-term foster care with eventual return to the parents' home. The case plan also stated that "in order to assure that a permanent placement for [H.A.] is established with minimal delay, [SRS] will initiate the termination of [the father's] residual parental rights for [H.A.] by September 1, 1987 if he has not by that time been participating actively for at least three months in alcohol, sexual offender and individual therapy programs." Nowhere in the plan did SRS mention that it intended to seek the termination of parental rights of either parent in the upcoming eighteen-month review.
On March 16, 1987, SRS filed its "Dispositional Review Report" with the court recommending a continuation of SRS custody and transmitting the report of its administrative case plan review. SRS also filed and served a notice of a dispositional review hearing in the juvenile court stating that its recommendation to the court was: "Long term foster care with eventual return to the parents' home." The second dispositional review hearing began on May 11, 1987. The court initiated the proceeding by taking judicial notice, without objection, of its findings of fact made in the February 1986 disposition review proceeding. The only witness who testified on the first day of hearings was one of the SRS social workers.
The hearing was continued until June 8, 1987, at which time the social worker concluded her testimony. Following the social worker, the State called as a witness a psychologist who had recently completed a psychological evaluation of H.A. and her parents. The mother's attorney objected to the psychologist being called at that time because he had been provided with a copy of the psychologist's report only that day and had not yet been able to review it. The court granted a short recess to allow the attorney to read the report, and then permitted the psychologist to testify. The psychologist's report recommended termination of all residual parental rights and responsibilities and that the juvenile be placed for adoption. When the psychologist reached this subject during her direct examination, both parents objected on the grounds that it exceeded the scope of the SRS case plan that was on review. The court overruled the objection, and permitted the psychologist to testify concerning adoption and termination of rights. At the close of the State's direct examination, the court continued cross-examination to a later date in order to allow the attorneys more time to review the report.
The hearings continued one month later, on July 6, 1987. By this time, it was clear to all parties that SRS now sought termination of parental rights. SRS claims that on June 18, 1987 it filed a new plan and a petition to terminate parental rights. The docket entries reflect such a filing although it appears that they went out of the court's possession and were not before the court at that point. The parties, however, apparently received copies of the documents.[*] In any event, the statements of the lawyers at the July 6th hearing show that they were aware that SRS had changed its position and sought termination of parental rights as recommended by the psychologist.
At the July 6th hearing, the psychologist was subjected to extensive cross-examination by the lawyers for the parents. Two other SRS case workers also testified on that day. The new SRS plan was introduced through one of the workers, and the court ruled that the proceeding "now encompass[es] the issue of termination of parental rights."
*887 The hearing was again continued until September 29 and 30, 1987. The mother testified at length on September 29, and again for a shorter time on September 30. Although the hearings concluded on September 30, SRS moved to reopen the hearings, and additional testimony was taken on January 27 and 28, 1988.
Based upon over one hundred separate findings of fact, the court concluded in its March 16, 1988 order that "[e]ach of these parents, in their own way, have fostered the continuance of chaos within this family, a destructive environment for the children and ultimately destruction of their own home. They are demonstrably unfit to resume the duties of parenting of [H.A.]." The court terminated the residual parental rights of the parents and granted to SRS the authority to consent to the adoption of H.A.
Both parents appeal the court's termination order. The mother raises four issues on appeal: (1) that the trial court violated her due process rights when it allowed SRS to change the disposition hearing issue from continued foster care to termination of parental rights without providing notice to the parents; (2) that the trial court erred in its reliance upon the testimony of an expert witness because the mother's attorney was precluded from challenging the credibility and admissibility of the expert's testimony; (3) that the trial court did not find sufficient clear and convincing evidence to terminate the parental rights of the mother; and (4) that the trial court failed to find facts to support a substantial change in material circumstances necessary for the jurisdiction to modify a dispositional order.
The father primarily alleges two errors on appeal: (1) his due process rights were violated by late notice that SRS was seeking to terminate his parental rights; and (2) the trial court's findings of fact were either erroneous or irrelevant, and the conclusions of law were unsupported by the findings.
The parents' first complaint is that their due process rights were violated during the second dispositional review proceedings because SRS sought to terminate their parental rights without first providing notice when it initiated the proceeding. 33 V.S.A. § 658(b).
The procedural posture of this case is very similar to the recently decided case, In re J.R., ___ Vt. ___, 570 A.2d 154 (1989). In that case, SRS initially filed a report prior to the eighteen-month review recommending that SRS retain its legal custody of the juvenile. The juvenile's attorney objected and orally requested an order terminating the parents' residual parental rights. SRS then joined in the juvenile's request and issued a supplementary disposition report in support of this new position. We first determined that the juvenile court has the statutory authority to terminate residual parental rights at either the original disposition proceeding or at a § 658 disposition review proceeding. Id. at ___, 570 A.2d at 160 (the power to terminate residual parental rights is implied in the power specified in § 658(d)(4) to consider the child for adoption). We then concluded that the court properly terminated the residual parental rights. We found that there was no procedural error where: all parties to the action were informed that the termination of residual parental rights would be considered at the continued hearing five weeks later; all parties had the opportunity to present evidence, cross-examine the witnesses and make arguments before the court; and the parents both participated and vigorously opposed termination of their parental rights. Id. at ___, 570 A.2d at 160-61.
The due process rights of the parents must be strictly observed in a termination proceeding. See In re R.M., 150 Vt. 59, 70, 549 A.2d 1050, 1057 (1988). The notice must include the fact that the State is seeking a termination of parental rights. See People in the Interest of E.A., 638 P.2d 278, 283 (Colo.1981) (notice must include "adequate notice of the possibility of termination of parental rights"). It must also include the grounds on which termination is sought. See In re R.M., 150 Vt. at 70, 549 A.2d at 1057; In re T.M., 138 Vt. 427, 429, 415 A.2d 1330, 1331 (1980). In *888 order for a notice violation to result in reversal of a modification order, prejudice must be shown by the party claiming a violation. Id.
While there was a technical failure to provide notice in this case at the outset of the proceeding, it was corrected in sufficient time to avoid any prejudice to the parents. By the time the parents cross-examined the psychologist, and months before the close of the evidence, the parents knew that SRS was seeking termination of parental rights from the expert's direct testimony and the modified SRS case plan. Both the testimony and the case plan gave the parents a detailed statement of the grounds for the new SRS recommendation. There is no violation of due process.
The mother's next point of error is that her cross-examination of the expert witness was improperly limited on two occasions. Although juvenile CHINS proceedings are civil, and not criminal, in nature, the proceedings involve fundamental family rights. For this reason, we have held that parties are afforded the opportunity to cross-examine and rebut opposing witnesses. See In re J. & J.W., 134 Vt. 480, 481, 365 A.2d 521, 522 (1976); In re M.P., 133 Vt. 144, 146-47, 333 A.2d 116, 118 (1975). The right to confront and cross-examine witnesses, however, is not absolute. The trial court is responsible for controlling the orderly progress of the trial and the limits of the cross-examination. See State v. Miller, 146 Vt. 164, 174, 502 A.2d 832, 838 (1985); V.R.E. 611. This control is left to the sound discretion of the trial court, and the reviewing court will not disturb its decision unless there is a finding that the court abused its discretion. See id. at 174-75, 502 A.2d at 838-39.
The mother characterizes her claim as one in which she was denied the opportunity to cross-examine the expert. In fact, the mother's attorney conducted an extensive cross-examination of the expert. Rather, the scope of cross-examination was limited by the court on two occasions.
In one instance, the expert stated on redirect examination that she had been pushed earlier by H.A.'s mother. The deputy state's attorney asked several questions concerning this incident, attempting to elicit testimony concerning the mother's lack of self-control, but the expert stated that she would "really hesitate to draw conclusions from just one incident." On cross-examination, the mother's attorney also asked several questions about the alleged pushing. The relevant testimony is as follows:
Attorney: And you were bumped as [the mother] was walking out [of the court-room]? You didn't see her shove you, did you?
Expert: Well, it felt more like a shove than a bump. I mean, it knocked me to the side so if it was a bump it was a strong bump.
Attorney: Well, if I were to tell you that I saw it and she simply bumped you as she walked by, would you disagree with me?
The Court: I think we'll have to preempt the form of that question unless you want to testify about this.
Attorney: Well, Your Honor, if the witness is testifying she was shoved, I think I may have to testify because that's not what occurred.
The Court: We're not going to waste time with it.
The juvenile court made reference to this pushing incident in its March 16, 1988 findings of fact, stating that the mother "continues to address resented directives by authority figures with verbal or physical resistance." The court said that this was "explicitly characterized" by the pushing incident.
Although the attorney was free to question the expert concerning the pushing incident, it appears that during this line of questioning the attorney himself began testifying as he asked the witness questions. At that point, the juvenile court used its discretionary power under V.R.E. 611(a) to make the "interrogation and presentation orderly and effective for the ascertainment of the truth" and cut off that line of questioning. The mother was free to put on evidence by others that the incident represented *889 a bump and not a shove. We conclude that the court properly exercised its sound discretion.
The second instance arose when the judge interrupted the mother's attorney during cross-examination as he challenged the basis of the expert's opinion regarding permanent placement for H.A. The attorney asked the expert if she had input from a therapist who had provided family counseling to the juvenile and her family over an extended period of time. The expert acknowledged that she had not contacted the therapist, but admitted that it was "significant" that there had been family counseling. The attorney asked numerous questions concerning the relevance of the therapy and the fact that the expert had not taken it into account when she prepared her report. The conclusion of this line of questioning is as follows:
Mother's Attorney: Well, Doctor, we're talking about your evaluation and recommendation to terminate these parents' rights to their children, you're telling me now that you did it without information and input you consider significant?
SRS's Attorney: Objection, Your Honor. Once again....
The Court: All right. All right. Mr. Hertz, you may terminate this line of examination. We understand fully what's going to happen here. If you and Mr. Kramer would like to have your respective clients execute a proper release for [the therapist], we'll make the information available to [the expert] and if she chooses to file a supplementary report, I'll receive it within two weeks. There. Go on to your next line of questioning.
Mother's Attorney: Thank you, Your Honor.
The parents subsequently agreed to provide the expert with access to the therapist's information. The expert then filed a supplementary report. The court based a number of its findings on the expert's report.
Under the rules of evidence, the court may exclude relevant evidence if its "probative value is substantially outweighed... by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." V.R.E. 403. Although the mother argues that the trial court did not allow the mother a fair opportunity to cross-examine and challenge the expert's opinion, we do not find that this claim accurately represents the cross-examination. There was extensive cross-examination concerning this issue, and the court cut it short only after the attorney pursued the same line of questioning four or five times. We cannot say that the court abused its discretion in limiting the scope of cross-examination when the issue had been thoroughly explored.
The mother's final two arguments are interrelated and concern the juvenile court's findings of fact and conclusions of law. She argues that the juvenile court failed to find facts sufficient to support a substantial change in material circumstances necessary to modify a dispositional order. In addition, she claims that the juvenile court made no specific findings regarding her parental unfitness, and therefore, there was insufficient clear and convincing evidence to terminate her parental rights. She contends that, instead, the juvenile court collectively condemned the parents without making sufficient findings as to her. In order to review these claims, we first place them in the context of our recent decisions.
We begin by recognizing that the mother is clearly correct that the juvenile court must consider each parent individually. As we have stated numerous times, the "State's power to terminate parental rights is `awesome' and `should be used ... only as a last resort.'" In re J.R., ___ Vt. at ___, 570 A.2d at 161 (quoting In re D.R., 136 Vt. 478, 480, 392 A.2d 951, 952 (1978)). Thus, before the court can terminate parental rights, it must find by clear and convincing evidence that each parent will be unlikely to resume his or her parental duties within a reasonable period of time. See id. at ___, 570 A.2d at 161-62; 33 V.S.A. § 667(3); see also In re A.D., 143 Vt. 432, 435, 467 A.2d 121, 123 (1983).
*890 In In re D.P., 147 Vt. 26, 510 A.2d 967 (1986), this Court reviewed the lower court's order terminating the parental rights of both the mother and father. We found that while the court had made the necessary findings by clear and convincing evidence with respect to the father in terminating his parental rights, it was not possible to determine whether the court had applied the correct legal standard to the evidence concerning the mother's parental unfitness. We therefore affirmed the order terminating parental rights of the father, but reversed the order as it applied to the mother and remanded the matter for a new disposition hearing. Id. at 33, 510 A.2d at 971.
Having acknowledged that the court must examine the circumstances of both parents individually, we now turn to the more pertinent issue of whether the court properly concluded that the mother was unfit to resume her parental duties. Our cases require the juvenile court to undergo a two-step analysis in § 658 disposition review proceedings when SRS seeks to terminate residual parental rights. See, e.g., In re J.R., ___ Vt. at ___, 570 A.2d at 161. First, before the court can modify the existing disposition order, it must find that a "substantial change in material circumstances" has occurred. Id. at ___, 570 A.2d at 161; see also In re C.W., 148 Vt. 282, 283-84, 532 A.2d 566, 568 (1987). Second, the court must determine whether the best interests of the child, as defined in 33 V.S.A. § 667, require that all parental rights and responsibilities be terminated. In re C.L., 151 Vt. 480, 489, 563 A.2d 241, 247-48 (1989). The statute provides four factors the court must analyze in making its decision under § 667. We have stated that the most important of these factors to evaluate in this step is whether the parent "will be able to resume his [or her] parental duties within a reasonable period of time." In re J.R., ___ Vt. at ___, 570 A.2d at 161.
The juvenile court began its March 16, 1988 conclusions of law analysis by stating that "there must be change in material circumstances which requires the modification in the best interests of the child." The court then reviewed the four § 667 criteria for determining the best interest of the child without first determining whether there had been a change in material circumstances. The mother claims the omission was error warranting reversal. Although it is the preferred practice for the court to show that changed circumstances have been found, we have never held that a modification order under § 658 must be reversed in the absence of explicit findings of changed circumstances. See In re C.L., 151 Vt. at 482-83, 563 A.2d at 243. Rather, the changed circumstances test is met when the findings in the case are "replete with facts sufficient to meet the required standard." Id. at 483, 563 A.2d at 243-44.
A change in circumstances is most often found when the parent's ability to care properly for the child has either stagnated or deteriorated over the passage of time. See In re J.R., ___ Vt. at ___, 570 A.2d at 161; In re C.L., 151 Vt. at ___, 563 A.2d at 244. Here, the mother argues that stagnation alone could not amount to changed circumstances because the court had found at the close of the first disposition review proceeding that she was "ready to reassume parenting duties." Based on factual findings related directly to the mother, however, the trial court found that her parenting ability had in fact regressed. We believe that the juvenile court made ample findings to support its conclusion that her parenting ability had deteriorated to the point that she was "demonstrably unfit to resume the duties of parenting [the juvenile]." The failure to specifically find a change in material circumstances does not warrant a reversal.
As previously mentioned, the juvenile court's findings of fact in disposition proceedings must be supported by clear and convincing evidence. See In re J.R., ___ Vt. at ___, 570 A.2d at 158. In reaching its findings, the court must weigh the credibility of the witnesses and resolve conflicts in the evidence. The court's findings will withstand Supreme Court review unless they are clearly erroneous. Id. at ___, 570 A.2d at 158; In re C.L., 151 Vt. at 484, *891 563 A.2d at 244. The court's conclusions will also be affirmed if they are supported by the findings. In re J.R., ___ Vt. at ___, 570 A.2d at 158.
The juvenile court made extensive findings which detailed the relationship between H.A. and her parents, and SRS's involvement in the case. A large number of these findings describe the mother's actions. In its final finding, the court specifically stated that the "findings of fact in this case are supported by clear and convincing evidence." Thus, the court based its findings upon the proper legal standard. Although the mother lists numerous findings with which she finds fault, we conclude that the court's findings are supported by the evidence before it.
The court's conclusions are likewise supported by the findings. And again, several of the conclusions relate specifically to the mother. For example, the court concluded that she was not prepared to resume her parental duties within a reasonable period of time. Specifically, the court stated that:
She has not protected her children despite patent evidence of sexual impropriety. When confronted with any authority whatsoever, she manifests her disagreement by aggressive conduct. Although exposed to appropriate programming, she either fails to complete it, misses appointments, or regresses from any real learning and positive behavioral change. She has not improved her ability to parent in the slightest. [The mother] will not be able to protect [H.A.] in the future. She does not believe [H.A.'s] report of sexual abuse.
Each of these parents, in their own way, have fostered the continuance of chaos within this family, a destructive environment for the children and ultimately destruction of their own home. They are demonstrably unfit to resume the duties of parenting of [H.A.].
Applying the factors set forth in § 667, we conclude that the court made ample findings and conclusions specific to the mother that justify its decision to terminate her parental rights.
Finally, the father raises numerous claims concerning the court's findings of fact and conclusions of law. Specifically, he states that the findings upon which the court concluded that he was unable to resume parenting were erroneous, irrelevant and unsupported by the evidence. We disagree. After reviewing the record below, we believe that there was ample testimony to support the court's findings. While it is true that conflicting evidence was presented at the hearing, the trial court must weigh the evidence and resolve the conflicts where it can do so under the requisite standard of proof. We conclude that the findings are not clearly erroneous when viewed against the clear and convincing evidence standard. Likewise, the conclusions of law are supported by the findings.
Affirmed.
NOTES
[*] While it is not entirely clear from the docket entries, it appears that the documents filed in the court on June 18th were sent by the clerk to the state's attorney and never refiled thereafter. The social worker who prepared the documents testified that she sent copies of them to each of the parties.