624 A.2d 362 (1993)
In re J.M., Juvenile.
No. 92-106.
Supreme Court of Vermont.
March 12, 1993.
*363 Jeffrey L. Amestoy, Atty. Gen., Montpelier, and Michael O. Duane, Asst. Atty. Gen., Waterbury, for plaintiff-appellee.
Robert Paolini of Martin & Paolini, P.C., Barre, for defendants-appellants.
Before ALLEN, C.J., and GIBSON, DOOLEY and JOHNSON, JJ.
ALLEN, Chief Justice.
The parents of J.M., a juvenile, appeal the termination of their residual parental rights, arguing that the family court failed to apply the proper legal test in concluding that their progress toward reunification with their daughter had stagnated and that they would not be able to resume custody within a reasonable time. The parents also contend that there was no clear and convincing proof that the best interests of the child under 33 V.S.A. § 5540 required termination. We affirm.
J.M. and her two siblings were placed in the legal custody of the Commissioner of Social and Rehabilitation Services (SRS) when J.M. was approximately three months old. J.M. and her siblings had suffered from severe physical and emotional neglect. J.M. was placed in a foster home in Orwell, and she has remained in that same home throughout the course of these proceedings.
The SRS case plan was aimed at the progressive reunification of each child, beginning with the oldest and ending with J.M. The oldest child was reunited with the parents in February 1990 and the next child in September 1990. SRS continued its plan to reunite J.M. with the family, and at the October 1990 case plan review, the goal was to reunite J.M. with her parents in six months or to begin termination proceedings. After the birth of their fourth child in December 1990, the parents missed numerous visitations with J.M. The parents told the SRS social worker that they wanted to delay reunification with J.M. until the newborn was six months old. The social worker explained that J.M. was approaching two years of age, was becoming more attached to the foster family, and could not wait that long.
Meanwhile J.M. thrived in her foster home. Although J.M. progressed while under the care of her foster parents, there was testimony that J.M. returned from visits with her biological parents hungry, unclean, and emotionally distressed.
In April 1991 the court conducted an 18-month dispositional review, pursuant to § 5531. SRS recommended that legal custody of J.M. remain with the Commissioner of SRS and that if J.M. were not reunified with her parents within three months, termination and adoption be pursued. Over the next six months, efforts to increase visitation between J.M. and her parents were not successful. As the trial court stated, "They would not be rude to the child but they continued to avoid visits as scheduled, giving a variety of justifications."
The court findings describe in detail numerous areas in which the parents responded inappropriately to J.M.'s needs during this period, although they demonstrated some improvement over past behavior and did succeed in reuniting with their two oldest children. SRS advised the family court, however, that J.M. "is a timid and fragile child and is very different from the [family's] other children in her behaviors and in her emotional and psychological needs." Moreover, a psychological evaluation concluded that the foster parents had become J.M.'s psychological parents. SRS based its petition to terminate on the inability of either biological parent to understand or meet J.M.'s particular needs. The trial court granted the SRS petition, and the present appeal followed.
When termination of parental rights is sought at a modification proceeding, 33 V.S.A. § 5532 requires the court to conduct a two-step analysis. In re J.R., 153 Vt. 85, 99, 570 A.2d 154, 161 (1989). First, the court must find a substantial change in material circumstances warranting modification. Id. Second, the court must find that the best interests of the juvenile require termination of parental rights under § 5540. Id. at 100, 570 A.2d at 161. Such findings will withstand Supreme *364 Court review unless they are clearly erroneous. In re H.A., 153 Vt. 504, 515, 572 A.2d 884, 890 (1990).
The first step in the analysis, a substantial change in material circumstances, is "most often found when the parent's ability to care properly for the child has either stagnated or deteriorated." Id. Stagnation can "be shown by the passage of time with no improvement in parental capacity to care properly for the child." In re J.R., 153 Vt. at 99, 570 A.2d at 161.
The parents argue that termination of parental rights is not supported by sufficient findings of risk to J.M. They contend that stagnation is properly defined as a situation where there has been a complete lack of movement toward reunification.
Although it was undisputed that the parents improved their generalized parenting skills, the court found that these skills had not improved their ability to meet the unique needs of J.M. The testimony of early neglect and its special impact on J.M. was extensive. J.M. was particularly fragile and vulnerable. The court's findings are based on the parents' lack of improvement in capacity to care for J.M., and these findings are based on clear and convincing evidence in the record.
The second step of the analysis requires consideration of the four factors set forth in 33 V.S.A. § 5540 in determining whether J.M.'s best interests mandate termination of appellants' parental rights and responsibilities. The parents argue that the court's analysis gave undue weight to the psychological bond with the foster family. The court, however, first considered the interaction of J.M. with her biological parents under § 5540(1) and found:
The parents made only minimal physical contact with the child during visits. Neither parent would hold the infant for any period of time. They made no attempt to understand or seek information on the child's development or needs. Despite repeated advice and offers of information from the foster parents and the social worker of the child's inherent reticence to communicate her needs, neither parent demonstrated [an] interest or desire to learn.
The court then considered the interaction of J.M. with her foster parents under § 5540(1), finding:
"J" continued to thrive in the foster home setting. She developed physically and emotionally, approaching her chronological age targets. She overcame the withdrawn rag doll appearance, now beginning to walk and to verbalize her needs. She began smiling and laughing.
Therefore, the court's findings under § 5540(1) were not based upon an improper weighing of J.M.'s bond with her foster family but on testimony that her biological parents were unable to care for J.M. and that her foster parents had become her psychological parents.
The parents also contend that because they were making considerable, even dramatic, progress in improving their parenting skills, the court erred in concluding that they would not be able to resume parental duties within a reasonable time under § 5540(3). In re R.W., 154 Vt. 649, 650, 577 A.2d 253, 253 (1990) (mem.) (interpreting identical provision of prior codification of same statute); In re L.A., 154 Vt. 147, 158, 574 A.2d 782, 788 (1990) (same). The weight of the evidence, however, demonstrated that the degree of improvement, even if continued, would not allow reunification of J.M. with her parents in time to prevent very significant harm to J.M., whose needs were markedly different from those of the other children in the family. The trial court concluded that parental improvement had come too late and that the best interests of the child were served by termination. That conclusion is amply sustained by the record.
Affirmed.