635 A.2d 1207 (1993)
In re D.B., T.B., J.B., and S.B., Juveniles.
No. 92-539.
Supreme Court of Vermont.
December 10, 1993.
*1208 Jeffrey L. Amestoy, Atty. Gen., Montpelier, and Michael O. Duane, Asst. Atty. Gen., Waterbury, for plaintiff-appellee.
Paul D. Jarvis of Jarvis & Kaplan, Burlington, for defendant-appellant father.
Norman R. Blais, Burlington, for defendant-appellant mother.
Before ALLEN, C.J., and GIBSON, DOOLEY, MORSE and JOHNSON, JJ.
MORSE, Justice.
Biological parents appeal the family court's order terminating their residual rights to parent their four daughters. 33 V.S.A. §§ 5532, 5540 (TPR proceeding). At the time of hearing, the girls were aged 12, 8, 6, and 5. The parents take issue with the court's essential finding that their progress was insufficient to warrant further rehabilitation efforts toward reuniting the family. They also maintain that less drastic alternatives to termination of parental rights were not adequately explored and that the court improperly denied them a hearing on motions to reopen the evidence. We affirm.
In February 1990, all four girls were adjudicated children in need of care and supervision (CHINS), pursuant to 33 V.S.A. § 5502(a)(12)(A), (B), in part because of sexual abuse, including an older brother's sexual contact with two of the girls and three of the girls viewing pornographic acts in their parents' presence and with their encouragement. Consequently, legal custody and guardianship of the daughters were transferred to the Department of Social and Rehabilitation Services (SRS). In January 1992, after multiple foster care placements, the girls were placed together with foster parents willing to adopt them. In May 1992, SRS brought termination proceedings, which resulted in termination of parental rights with respect to all four girls.
In early 1990, SRS's case plan was designed to reunite the girls with their parents by providing for psychological evaluation of the parents, parental education in properly disciplining and protecting the children, and counseling for all family members. Then, in August 1990, two of the girls alleged their father had sexually abused them, behavior *1209 that was later confirmed by his admission. Mother admitted she was involved in the abuse by encouraging the girls to touch father's penis on numerous occasions. In October 1990, the parents moved to Florida, despite SRS's attempt to dissuade them because of the adverse impact the move would have on rehabilitation efforts. The children remained in foster care in Vermont. Mother returned a few months later while father remained in Florida.
Meanwhile, father had been charged here with lewd and lascivious behavior with two of his daughters and sexual assault on a relative. When he eventually returned from Florida in January 1991, he was incarcerated until spring when the criminal charges were resolved by plea agreement. He was placed on probation with conditions aimed at controlling his sex offending. Mother admitted using cocaine but refused treatment until February 1992, when she entered a drug program. At the time of the May 1992 hearing, she had experienced alternating periods of abstinence and relapse, but had been cocaine-free for the five previous days. Father began general counseling in March 1991 and sex offender treatment in August 1991, but, given his parenting deficiency, the family court determined he would need "a minimum of one and up to two years" of treatment to develop parenting capacity. Moreover, for father "to realistically reassume or assume his parental responsibilities at the end of that time," mother would have to be free of drug addiction. The court concluded that "for (father) to parent the children successfully, he must have the assistance of the children's mother . . . they must function as a unit or not at all."
During the time between the transfer of the girls' custody to the State and the TPR hearing, progress toward unification of the family was hampered by the parents' erratic visits and their inconsistent commitment to treatment. The court found the girls have adapted well to the family wishing to adopt them and that the children need to settle down with responsible parents. The family court concluded that any further delay would exacerbate their emotional instability and would not be in their best interests.
A court may terminate parental rights a modification hearing if it finds that there has been a substantial change in material circumstances since the disposition order and that termination is in child's best interests. In re A.F., 160 Vt. ___, ___, 624 A.2d 867, 869 (1993). The child's best interest is to be determined by the criteria in 33 V.S.A. § 5540. "Stagnation" of parental ability is often the change in circumstances alleged in these cases. Id.; In re H.A., 153 Vt. 504, 515, 572 A.2d 884, 890 (1990). The change in circumstances is the failure of the expectation that parental ability to care for a child will improve within a reasonable time after the CHINS adjudication. The key factor affecting the child's best interests is the likelihood that the biological parent or parents will "be able to resume . . . parental duties within a reasonable period of time." 33 V.S.A. § 5540(3); see In re E.G., 139 Vt. 171, 173, 423 A.2d 1197, 1198 (1980) (whether family can be reunited in a reasonable time is now prime consideration in termination proceeding).
The parents claim there is no clear and convincing evidence supporting a finding of stagnation because the court found the issue was "an exceedingly close call" and there was "some improvement in the father, and some efforts on the part of the mother, albeit belated, to improve her condition as well." Father's therapist had concluded that progress in treatment had been "substantial." They argue that, for stagnation to occur, improvement must be nonexistent and, in support, cite In re J.R., 153 Vt. 85, 99, 570 A.2d 154, 161 (1989) (stagnation may be shown by "passage of time with no improvement in parental capacity to care properly for the child") (emphasis added).
Our more recent cases, however, do not support the parents' interpretation of J.R. In In re J.M., 160 Vt. ___, ___, 624 A.2d 362, 364 (1993), parents whose rights were terminated contended that "stagnation is properly defined as a situation where there has been a complete lack of movement toward reunification." We held, to the contrary, that stagnation may be found even though a parent's generalized parenting skills improve. Id.; see also A.F., 160 Vt. at *1210 ___, 624 A.2d at 871, and cases cited therein (that parent showed some progress does not preclude finding of changed circumstances if it is unlikely that parent will be able to resume parental duties in a reasonable time). Rather, the question is whether the improvement substantially conformed with the expectations at the time of the CHINS adjudication and with SRS's case plan. If the expectation of improvement has been met, there is no change in circumstances. If, however, the expected improvement has not occurred, there may be a change in circumstances; if such a change is shown, the inquiry shifts to what outcome will be in the child's best interests.
The court's conclusions, that the children's lives would be adversely affected by maintaining the status quo and that adoption was in their best interests, were supported by the evidence. The court stated:
At the time of disposition the parents were totally unfit to have custody of their children. As discussed above, the likelihood that either parent will be able to resume parental duties within a year of the hearing is nil. At the end of one year it may be possible to determine the time frame for resumption of parental duties.
The parents quarrel with this statement about the time necessary for resumption of parental duties, contending that father's expert had contradicted the court's finding. There was no contradiction, and even if there had been, the court is not required to accept an expert's statement. Father's expert, after seeing father for a year, stated that he had only recently begun to work on father's parenting skills and he had not had the opportunity to see him interact with his children. He further stated that, although it would be "reasonable to assume some progress will be made," he would like to see father assessed in a year. The expert was not entirely clear about what level he expected father to be able to achieve by the end of the second year, and the court's finding that it would be one to two years before father could begin to parent the girls was not clearly erroneous. Further, even this modest prediction remained contingent on mother's recovery from her cocaine addiction, which the court, in an unchallenged finding, stated would require her complete abstinence for a year. Thus, there was no error in the court's findings.
The parents also argue that the court failed to investigate less drastic alternatives to terminating parental rights. They assert that such an investigation would have culminated in the court's finding that temporary placement outside the home would be adequate to serve the best interest until it was possible to reunite the family. See In re E.G., 139 Vt. at 173, 423 A.2d at 1198. The court, however, specifically found that continuing to live in a temporary foster-care arrangement would have been unacceptably harmful to the children. Thus, the court did find that temporary placement outside the home was not an adequate alternative to severing residual parental rights. Because the evidence supported termination and because the court considered and rejected the only alternative urged by the parents, continuation in foster care, we find no error.
Finally, the parents claim the court erred in not conducting a hearing on their motions to reopen the evidence, which were filed after the termination hearing but prior to the court's issuing its termination order. During this period, each parent moved to reopen the evidence to show that they had made progress in their respective treatment regimens. Mother proposed to show that she would be able to resume her parental responsibilities soon because she had remained drug-free for two months. Father wanted to show that he was making similar progress because he was about to begin the parenting skills component of his treatment plan.
In construing V.R.C.P. 78(b)(2) (disposition of written motions), we have held that where there has been a trial on the merits the decision to hold an evidentiary hearing on a posttrial motion is within the discretion of the trial court. Williams v. Williams, 158 Vt. 574, 576, 613 A.2d 200, 201 (1992). This rule also applies to motions to reopen the evidence after the close of a proceeding passing on the merits of an action to terminate parental rights. Our standard for reviewing a trial court's decision not to hold a hearing *1211 on a Rule 78(b)(2) motion is narrow and depends on an affirmative showing that the court abused or withheld its discretion. Id. Rule 78(b)(2) does not require a hearing when what is alleged, even if proven, would not change the result. What was alleged as "improvement" in the motions did not necessitate a different view of the merits as expressed in the family court's opinion.
Affirmed.