*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

# ENTRY ORDER

SUPREME COURT DOCKET NO. 2014-475

APRIL TERM, 2015

| | |
|---|---|
| In re D.G. and D.G., Juveniles | } APPEALED FROM: |
| | } |
| | } Superior Court, Chittenden Unit, |
| | } Family Division |
| | } |
| | } DOCKET NO. 81/82-3-13 Cnjv |

Trial Judge: Thomas J. Devine

In the above-entitled cause, the Clerk will enter:

Mother appeals from a superior court judgment terminating her parental rights to the minors D.G. and D.G. She contends the decision "lacks rationality" in view of the court's findings regarding the role she plays in the children's lives. We affirm.

The facts are essentially undisputed, and may be summarized as follows. Mother has two children, a daughter who was twelve years old at the time of this proceeding, and a son who was ten. Mother is not married to the children's father. The children first came to the attention of the Department for Children and Families (DCF) in September 2009, based on reports that mother had physically abused her daughter. An investigation revealed that both children lacked basic hygiene, and that the children were exposed to relatives with a history of sexual assault. The parents stipulated the children were in need of care or supervision (CHINS) in September 2010, and the children remained with the parents under a conditional care order. DCF closed the case in December 2011.

The State filed a second CHINS petition in March 2013, based on school reports concerning the children's hygiene, particularly the boy's encopresis (a bowel-control condition) and aggressive behaviors, and concerns that they were not taking prescribed medications. The children remained with the parents under a conditional care order until May 2013, when they were placed in temporary DCF custody based on the boy's continued problems at school, and the parents' failure to schedule substance-abuse assessments. In July 2013, the parents stipulated to an adjudication of CHINS based on their continuing failure to meet the children's housing, medical, and schooling needs.

The court approved a disposition plan in September 2013, with concurrent goals of reunification or adoption after six to nine months. The plan called for the parents to remain substance-free and follow all substance-abuse treatment recommendations, work with service providers to establish stable housing, follow mental-health treatment recommendations, and engage in Family Time coaching. Although mother thereafter completed a treatment program, she was subsequently discharged from an aftercare program and tested positive for cocaine on several occasions. The court found that she did not work with service providers to find stable housing, did not regularly attend pre- and post-visit Family Time coaching sessions, and gained no insight into the children's profound emotional and behavioral needs.

The children were initially placed with an aunt, but the boy's behavioral problems proved too difficult for her and he was moved to the Baird Center in December 2013, and later to a Baird residential program known as Cabot House. He initially exhibited significant physical and verbal aggression, lacked basic self-hygiene, suffered from sleep disturbances, and continued to struggle with encopresis. The Baird assessment concluded that he had suffered significant and complex early child trauma, and required a highly structured living environment with clear and consistent expectations and regular therapy. He had shown significant improvement since his move to residential treatment, but regressed when there was a departure from his routine. By the time of the proceeding in this matter, he had progressed to the point where he would soon be ready to transition to a foster family, provided that they had no other children and could provide the same level of structure and consistency he was receiving at Baird.

The daughter stayed with her aunt for a period and then, after a brief stay in an emergency bed at Baird, transitioned to a foster home. In December 2013, she disclosed that she had been sexually abused by both her father and an uncle in separate incidents. The revelation led to criminal charges against father, who ultimately entered a no contest plea to a prohibited act. Mother doubted the girl's account of being improperly touched by father. Like her brother, the daughter suffered from neglect and developmental delays, as well as anxiety and trust issues. With regular therapy and an added level of structure and stability she had shown improvement, but she did not wish to resume visitation with either mother or father.

Based on the foregoing, the trial court found a substantial change of circumstance based on a stagnation in the parents' ability to care for the children. Despite working with DCF for a number of years, the parents were "largely in denial" as to their neglect and its effect on the children, had taken no steps to involve themselves in the children's treatment programs, failed to attend parenting classes, and continued to deny any sexual abuse of their daughter by father. Applying the best interests criteria, the court found that, although the parents love their children and had regularly attended visits with their son, the quality of their relationship with him was superficial, and with their daughter was strained and distant. They had not played a constructive role in the lives of the children, who were subject to abuse and neglect. And despite years of DCF services, the basic preconditions to reunification—remaining drug-free, mastering basic parenting skills, demonstrating minimal understanding of the children's significant problems and needs—remained, and the evidence showed that they could not resume parental responsibilities within a reasonable time. Accordingly, the court concluded that it was in the best interests of the children to terminate parental rights. Only mother has appealed the court's decision.

Mother's sole contention on appeal is that the family court's decision "lacks rationality" in light of its findings and the evidence regarding mother's role in the children's lives. Our review is limited. We do not "second-guess the family court or . . . reweigh the evidence, but rather . . . determine whether the court abused its discretion in terminating mother's parental rights." In re A.B., 174 Vt. 427, 429 (2002) (mem.). We will not disturb the family court's findings unless clearly erroneous, nor its conclusions if reasonably supported by the findings. In re H.A., 153 Vt. 504, 515 (1990).

Mother's claim is based on her assertion that the court's decision is inconsistent with its finding concerning the importance of "routine" in her son's life, as termination will end mother's weekly visits. She also contends that the decision is inconsistent with the court's purported finding that future contact with her daughter "may be therapeutically beneficial to the girl." The argument is unpersuasive. The routine which the court observed was necessary for the boy's progress involved living in a highly stable, structured setting with clear boundaries and expectations and consistent parental behavior. His weekly contact with the parents, which the

court characterized as superficial and "more akin to that of a playmate than parent," did not factor into this requirement. Nor did the court find that future contact with mother would be therapeutically beneficial for her daughter. Although her therapist stated that the daughter remained unwavering in her wish not to have parental contact, she acknowledged that it was possible, with continuing therapy, that the daughter's feelings may change. This does not support the argument that the court's decision to terminate parental rights was somehow inconsistent with the evidence, or the children's best interests. Accordingly, we find no basis to disturb the judgment.

Affirmed.

BY THE COURT:


_____
Paul L. Reiber, Chief Justice


_____
John A. Dooley, Associate Justice


_____
Beth Robinson, Associate Justice