---

### In re H.S.

[632 A.2d 1106]

No. 93-042

Present: **Allen, C.J., Gibson, Dooley and Johnson, JJ.**

Opinion Filed October 8, 1993

*Jeffrey L. Amestoy*, Attorney General, Montpelier, and *Martha Csala*, Assistant Attorney General, Waterbury, for Plaintiff-Appellee.

*Charles S. Martin* of *Martin & Paolini*, Barre, for Defendant-Appellant.

**Allen, C.J.** A mentally retarded mother appeals from an order of the family court terminating residual parental rights and responsibilities with respect to her son and transferring custody and guardianship to the Commissioner of Social and Rehabilitation Services (SRS). She claims that SRS unreasonably failed to provide her training and assistance tailored to her special needs as a retarded person, and that this prevented her from resuming parental responsibilities within a reasonable time. We affirm.

The mother, S.S., has a low IQ but is capable of independent living and does not have a legal guardian. Her son, H.S., was born in February 1987. Following a number of reports about possible physical abuse by S.S. and inadequate supervision of the child, SRS opened a protective services case in 1989, starting with day care services for H.S. In August 1989, the family was referred to a parent educator, Janice Whyman, who worked with the family until April 1990. Whyman, who was not specially trained to deal with mentally retarded adults, worked with S.S. on basic parenting skills, including toilet training, nutrition, safety, and protection issues. When Ms. Whyman ended her

services, she believed she had not been effective in teaching basic parenting skills to S.S., who, the court found, had great difficulty retaining information and would ask questions about a particular issue as though for the first time, even though the topic had arisen before. S.S. rejected Whyman's suggestion that she sign up for a program providing volunteer parent aides.

Two events prompted SRS to seek custody of H.S. In August 1990, the child fell from the back of a moving pickup truck and sustained extensive injuries. A few days later, SRS received a report that S.S. had grabbed her son and had hit him in the chest. After a contested merits hearing, the court found that H.S. was a child in need of care and supervision (CHINS). The disposition order gave SRS custody of H.S. and required participation by his mother and father in a "parents-in-distress" program, together with vocational rehabilitation and substance abuse screening and treatment for S.S. Joanne Thompson, an SRS caseworker, was assigned to the family and supervised most of the weekly visits between H.S. and his parents between February 1991 and January 1992.

SRS also provided a parent educator, Leslie Richardson, who met with the parents for one hour before their weekly meeting with H.S. between February and June 1991. Usually, Richardson was present during some or all of each visit. Richardson had a bachelor's degree in psychology and had worked extensively with families and children as a parent educator and case manager. She had no specific training with low-IQ adults, but did seek advice from knowledgeable colleagues. The court found that she attempted to keep her teaching as simple and practical as possible, using repetition and concrete examples. Despite a good relationship with Richardson, S.S. was unable to retain new information, could not apply examples, and "had trouble staying focused on the topic being discussed."

The court concluded that S.S. had not made any progress in her parenting skills, despite a generally cooperative attitude. As to her contention at trial that her lack of progress was attributable to SRS's failure to provide her with appropriate services, the court pointed to the lack of evidence that such training was available in Vermont, or that S.S. could benefit from it. The court found clear and convincing evidence of stag-

nation in the relationship between S.S. and H.S. and lack of improvement in her capacity to parent him. Based on the evidence of stagnation, the court found that there had been a real, substantial and unanticipated change in circumstances since the original disposition order and that S.S. would not be able to resume her parental duties within a reasonable time. The court specifically concluded that termination would be in the best interests of H.S., and that removing the child from his foster home would prove "disastrous." After a 12-month administrative review hearing in September 1991, the court terminated S.S.'s residual rights.

In a termination proceeding, the trial court first must conclude that a substantial change in material circumstances has occurred. *In re S.R.*, 157 Vt. 417, 420, 599 A.2d 364, 366 (1991); see 33 V.S.A. § 5532. If this threshold criterion is met, the court then determines whether termination of parental rights is in the best interest of the child. *In re S.R.*, 157 Vt. at 420, 599 A.2d at 366. Factual findings must be supported by clear and convincing evidence and will be upheld on review unless clearly erroneous. *In re H.A.*, 153 Vt. 504, 515, 572 A.2d 884, 890, *cert. denied*, 498 U.S. 861 (1990). If supported by the findings, the court's conclusions of law will be affirmed. *Id.* at 515, 572 A.2d at 891.

S.S. does not contest the factual findings that she is unable to assume parental rights and responsibilities, but argues that SRS caused the stagnation in the parent-child relationship by failing to provide services reasonably appropriate for her needs and abilities. In essence, S.S. contends that, despite the accuracy of the findings of fact, the court improperly used them in reaching the threshold conclusion of a substantial change in material circumstances. We disagree.

SRS has considerable freedom to fashion a flexible case plan, subject to court approval that the plan promotes the best interest of the child. See *In re L.T.*, 149 Vt. 473, 476–77, 545 A.2d 522, 524 (1988); *In re J.S.*, 153 Vt. 365, 373, 571 A.2d 658, 663 (1989). Given this flexibility, it cannot be said that as a matter of law SRS must provide S.S. with counselors specifically certified to train retarded persons in parenting skills. Therefore, her claim of error has merit only if the trial court erred in

its conclusion that the services actually provided were reasonable.

The trial court's findings reflect a detailed examination of the experience and credentials of those assigned to work with S.S. Prior to termination, SRS worked intensively with S.S. to improve her parenting skills. Both parent educators were well aware of S.S.'s limitations, and both used teaching methods that the court found appropriate, such as repetition and focusing the instruction on basic skills. They dealt with nothing more abstract than toilet training, appropriate discipline, and basic nutrition. In light of its findings, the trial court could reasonably conclude that SRS had made appropriate, reasonable efforts to assist S.S. in her attempt to resume parental duties.

Based on evidence from well-qualified parent educators, caseworkers, an adult protective service worker, and the team evaluating the potential for family reunification, the trial court concluded that there had been no improvement in the ability of S.S. to improve her skills or to provide a safe environment and care properly for H.S. The findings in support of stagnation are well supported by the evidence, and we will not disturb the court's conclusion based on those findings. *In re H.A.*, 153 Vt. at 515, 572 A.2d at 890.

*Affirmed.*