### In re A.W., Juvenile

[670 A.2d 1265]

No. 94-418

Present: **Allen, C.J., Gibson, Dooley and Johnson, JJ.**

Opinion Filed December 8, 1995

*Michael Rose*, St. Albans, for Appellant Mother.

*Charles S. Martin* of *Martin & Paolini*, Barre, for Appellant Father.

*Jeffrey L. Amestoy*, Attorney General, Montpelier, and *Harrison B. Lebowitz*, Assistant Attorney General, Waterbury, for Appellee SRS.

*Robert Appel*, Defender General, and *William A. Nelson*, Appellate Defender, Montpelier, for Appellee Juvenile.

**Gibson, J.** A.W.'s mother and father appeal a family court order terminating their residual parental rights to the boy. We reverse.

The Department of Social and Rehabilitation Services (SRS) first became involved with the family in October 1988 after receiving reports that father was sexually abusing his three-year-old step-daughter, K.M. In June 1989, the court ruled that K.M. was a child in need of care and supervision (CHINS) and removed her from her home. In September 1989, while K.M. was in SRS's custody, mother gave birth to J.W. At the age of three weeks, J.W. was hospitalized after losing seven ounces in three days due to a lack of proper nourishment. After observing the parents with J.W. for several days and noting that they were unable to properly feed or otherwise care for the infant, SRS took the child into protective custody, pursuant to an emergency detention order of the juvenile court. At a December 1989 merits hearing, the parents stipulated that J.W. was CHINS. In February 1991, the parents agreed to termination of their parental rights to J.W. and K.M., which the court ordered.

A.W. was born in March 1992. Based on its prior experience with the family and fear that the parents were unprepared and unable to properly care for a child, SRS took A.W. into protective custody within two days of his birth, pursuant to an emergency detention order. Following a merits hearing, the court determined that A.W. was a child in need of care and supervision. The court found that father had little, if any, parenting skills, and that he had been and remained a danger to abuse children both physically and sexually. The court also found that, despite the significant number of social service programs made available to the parents over several years, they were

incapable of providing A.W. with the minimum degree of health, safety, subsistence and care that he required.

Although the court found A.W. to be CHINS, it explicitly refused to draw any negative inferences from mother's and father's stipulation to termination of their residual parental rights to K.M. and J.W. Noting that at least part of the reason father and mother had agreed to give up their rights to K.M. and J.W. was the state's attorney's offer to dismiss pending criminal charges against father in exchange for the stipulation, the court concluded that there was "sufficient doubt on that matter as to preclude any finding here that [father and mother] voluntarily agreed to the severance of residual parental rights to [K.M.] and [J.W.]."

At A.W.'s disposition hearing in September 1992, the parents stipulated that the child should remain in SRS custody in accordance with the disposition report and case plan. Although not objecting to either the disposition report or case plan, the parents refused to sign the case plan. Both the report and the case plan incorporated the court's merits findings that father had sexually abused K.M., and the case plan required that he participate in a psychosexual evaluation to address his continuing denial and lack of progress concerning his sexual abuse of K.M. The case plan also required the parents to participate in a number of social service programs designed to improve their parenting skills and develop their capacity to care properly for a young child. The plan's goal was to reunite A.W. with his parents. After an eighteen-month disposition review, however, A.W., through his attorney, filed a petition to terminate his parents' residual rights. SRS joined in the petition.

Before the termination hearing, SRS and A.W. moved to preclude relitigation of the issue of father's sexual abuse of K.M. The court granted the motion, ruling that the issue of father's sexual abuse of K.M. was not material at A.W.'s termination hearing, and that, in any case, it was barred by the doctrine of collateral estoppel because of the parents' stipulation to SRS custody at A.W.'s disposition hearing.

In July 1994, the court terminated the parents' residual rights to A.W., finding that although father and mother had generally participated in the services set out in the case plan, their progress in achieving the goals necessary for reunification was minimal. The court found by clear and convincing evidence that the parents were not able to provide adequate food, hygiene, or security for A.W., that father presented an ongoing risk to the child as an untreated sex offender, and that mother would not be able to protect her child.

According to the court, despite a year of work with a counselor trained to assist sex offenders, father had made no progress in treating his sexual abuse of K.M. because of his steadfast denial that he had engaged in any sexually inappropriate behavior. Both parents continued to deny that any sexual abuse ever occurred, and further denied that mother could not protect A.W. from father's abuse. The court concluded that there was no reasonable possibility of the parents resuming parental duties in the future.

■ ■ A.W.'s parents argue that the court improperly granted SRS's motion to bar them from presenting evidence concerning father's alleged sexual abuse of K.M. We agree. In a termination proceeding, the court must first determine whether a substantial change in material circumstances has occurred. *In re H.S.*, 161 Vt. 83, 86, 632 A.2d 1106, 1107 (1993). A substantial change in material circumstances may be proved through clear and convincing evidence of stagnation, i.e., proof that the parents' ability to care for the child has deteriorated or stagnated to the point that they are unable to resume parental duties within a reasonable period of time. *In re M.M.*, 159 Vt. 517, 521-22, 621 A.2d 1276, 1279 (1993). Although both father and mother had deficient parental skills in areas unrelated to the sexual abuse issue, SRS's principal concern in this case, as reflected in the court's findings, was (1) father's refusal to take responsibility and accept treatment for his sexually and physically abusive behavior, and (2) mother's refusal to acknowledge father's abusive behavior, resulting in her inability to protect the child. In this context, the issue of deterioration or stagnation of parental ability could not be adequately reviewed without there first having been a determination, by clear and convincing evidence, that the abuse had occurred. See *In re J.R.*, 164 Vt. 267, 271, 668 A.2d 670, 673-74 (1995) (new termination hearing required where court's findings regarding best interests of children were improperly based on CHINS finding of sexual abuse made by mere preponderance of evidence; issue of sexual abuse had to be reconsidered at higher clear-and-convincing-evidence standard).

■ For similar reasons, we reject SRS's argument that the court's termination decision was supported by findings other than those concerning father's sexual abuse of K.M. Although the court detailed the parents' lack of significant progress in developing parenting skills, the primary focus of the decision was father's failure to acknowledge and address issues of sexual abuse, and mother's inability to protect the children from father's abuse. In short, we

cannot be sure that the court would have terminated the parents' residual rights absent the extensive, underlying findings regarding father's sexual abuse of K.M.

■■ Nor can the parties' stipulation to termination of parental rights to K.M. or their stipulation to the disposition order substitute for a clear-and-convincing finding by the court that father had sexually abused K.M. Although father and mother stipulated to termination of their rights to K.M. and J.W., the court found the voluntariness of that stipulation to be in doubt, and SRS does not ·challenge that finding here. Further, while the parties' stipulation to SRS custody at A.W.'s disposition hearing precluded the parents from complaining that the court made no finding of parental unfitness, see *In re J.H.*, 156 Vt. 66, 71, 587 A.2d 1009, 1012 (1991), the stipulation did not indicate that the parents agreed with the sexual-abuse allegations in the CHINS petition or the sexual-abuse evidence at the merits hearing. Although the parents agreed to proceed according to the case plan, which, among other things, required father to partici- pate in a psychosexual evaluation and to address his continuing denial of having sexually abused K.M., they never conceded that sexual abuse had occurred.

■ Moreover, the parents had little incentive to challenge the sexual-abuse allegations at the disposition hearing. The stipulation to SRS custody at disposition had significantly less impact on their parental rights than the termination petition ultimately brought by the child and SRS, particularly considering that the case plan goal was reunification and that broad social service programs were to be made available to further that goal. Thus, the incentive to litigate at disposition was substantially less than that at termination.

■ In sum, the court's CHINS findings, including its findings regarding father's sexual abuse of K.M, were explicitly made by a preponderance standard. A preponderance finding in a CHINS proceeding may not be relied upon in a termination proceeding, where findings must be based on clear and convincing evidence before parental rights may be terminated. *In re J.R.*, 164 Vt. at 271, 668 A.2d at 673-74. We make no judgment herein as to whether the sexual- abuse issue is a necessary component of the case. But because the issue played a significant role in the 1994 proceeding and in the court's decision therein, we must remand the matter for further proceedings.

*Reversed and remanded.*