VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.      23-AP-043

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

JULY TERM,   2023

In re A.T., Juvenile
(J.T., Father\* & A.H., Mother\*)

}
}
}
}
}
}

APPEALED FROM:

Superior Court, Franklin Unit,
Family Division
CASE NO. 113-7-20 Frjv
Trial Judge: Mary L. Morrissey

In the above-entitled cause, the Clerk will enter:

Mother and father appeal termination of their parental rights to A.T., born in July 2020. On appeal, mother argues that she was deprived of her due process because she was not able to confidentially communicate with her lawyer during the first day of the termination hearing. Father contends that the evidence does not support the family division's conclusions that his progress stagnated, and that termination was in A.T.'s best interests. We affirm.

The Department for Children and Families (DCF) began working with mother in 2011 due to concerns regarding homelessness, substance abuse, mental health, and struggles to meet the needs of A.T.'s older half-sister. In 2020, when A.T. was born, mother continued to have unresolved issues and father was incarcerated. A day after A.T.'s birth, the State filed a petition alleging that A.T. was a child in need of care or supervision (CHINS). The court granted custody to DCF, and, when A.T. was discharged from the hospital, DCF placed her with mother's paternal aunt, who had adopted her older half-sister. In October 2021, mother stipulated to the merits of the CHINS petition.

The case plan had a goal of reunification by June 2022. Some of mother's goals included obtaining safe and stable housing, completing Family Time coordination, completing a substance-abuse assessment and following recommendations, working with mental-health counselors, participating in a parenting class, and signing releases for DCF to monitor her progress. Father has an extensive criminal history and was incarcerated at the time of A.T.'s birth. He was released in April 2022 and remained under the supervision of the Department of Corrections. The case plan contained goals for father, including abiding by conditions of probation and parole, obtaining safe and stable housing, engaging with a domestic-violence specialist, completing a substance-abuse assessment and following recommendations, engaging in Family Time coordination, signing releases, engaging in programming while incarcerated, and maintaining contact with the DCF caseworker.

In June 2022, the State filed petitions to terminate parents' rights to A.T. The family division held a hearing over two days. Based on the evidence, the family division found that there was a change in circumstances due to parents' stagnation. The court found that mother had not made significant improvement on critical aspects of the case plan. Mother did not provide necessary releases and did not demonstrate she engaged in services related to her mental health or substance abuse. Mother did not prioritize improving her parenting skills and missed multiple contacts with A.T. After more than two years, mother did not progress to having unsupervised time. Father was incarcerated at the time of A.T.'s birth and was not released until A.T. was twenty-one months old. Although he engaged in some programming, father remained without stable housing and missed contacts with A.T., resulting in a lack of a relationship. The court concluded that termination was in A.T.'s best interests. A.T. had strong bonds with her foster parents, foster siblings, and half-sister. A.T. was well adjusted in her foster home, daycare, and community. A.T. had been in custody since she was one day old and had a strong need for stability and permanency. Parents were not able to assume parenting A.T. within a reasonable period of time given the substantial work they still needed to effectively care for A.T. Therefore, the court granted the termination petition. Both parents appeal.

When the termination of parental rights is sought after the initial disposition, the trial court must conduct a two-step analysis. In re B.W., 162 Vt. 287, 291 (1994). The court must find first that there has been a change in circumstances, and second that termination of parental rights is in the child's best interests. Id.; see 33 V.S.A. § 5113(b) (requiring "change in circumstances" to modify existing disposition order); id. § 5114(a) (listing factors to consider in determining child's bests interests). On appeal, we will uphold the family court's conclusions if supported by the findings and affirm the findings unless clearly erroneous. In re A.F., 160 Vt. 175, 178 (1993).

On appeal, mother does not challenge any of the court's findings related to the termination decision. Mother's arguments focus on the first day of the termination hearing in September 2022. At the start of the hearing, mother, father, and father's attorney were in person and all other parties appeared remotely. Mother expressed discomfort having her attorney be remote while she was in person. In response, prior to the presentation of evidence, the court recessed for an hour to allow her attorney to travel to the courthouse and attend in person. Once the hearing resumed, throughout the day mother made spontaneous comments on numerous occasions during witness testimony and attorney-court discussions. These comments were audible to the other parties. The court admonished mother to keep her comments to herself. The court stated that mother's statements were mostly reactions to witnesses' testimony and not attempts to confer with her attorney. To the extent that mother wanted to speak privately with her attorney, the court indicated that it would provide breaks for mother to do so. During foster mother's testimony, mother requested a break and the court recessed shortly thereafter. Just after the hearing again proceeded, mother requested another break. The court declined to immediately stop and recessed thirty minutes later. In the afternoon, mother requested a break and shortly thereafter the court recessed. At the second day of hearings, all parties appeared in person.

On appeal, mother argues that the hybrid format of the first day of hearings prevented mother from confidentially communicating with her attorney, resulting in a termination hearing without due process. Mother contends that she was not able to confidentially consult with her attorney because her communications were picked up by the microphone and broadcast to the other parties. She further asserts that she was not able to write her comments to her lawyer effectively and was denied the accommodation of frequent breaks. The State responds that mother failed to properly preserve this argument for appeal because her attorney failed to object

2

to the hybrid process or the microphone set up.  As to the merits, the State contends that mother's comments during the hearing were not attempts to communicate with her attorney and receive legal advice but were her reactions to the testimony.

It is up to the "sound discretion" of the trial court to control "the orderly progress of the trial." In re H.A., 153 Vt. 504, 510 (1990).  The record indicates that the family division acted well within its discretion here in conducting the hearing.  At the start of the hearing, at mother's request, the court took a recess so that mother's counsel could be present with her in the courtroom.  The court acknowledged at the hearing that parents were entitled to confidentially speak to their attorneys and observed that many of mother's comments were not directed at mother's attorney.  The court accommodated mother's requests for breaks by providing those at regular intervals and within a reasonable time.  The record reveals that mother had a meaningful opportunity to confer with her attorney, and on appeal, she has identified no prejudice that she suffered due to the hearing structure.

To the extent mother now claims that the hybrid nature of the hearing or the courtroom microphone setup violated her due process rights, mother failed to preserve this argument for appeal.  See In re G.F., 2007 VT 11, ¶ 23, 181 Vt. 593 (mem.) (explaining that constitutional claim not raised below is not preserved for appeal).  At no time did mother object to the hybrid participation by other parties or to the courtroom setup on the ground that it violated her due process rights by precluding her from confidentially communicating with counsel.  Therefore, we do not reach this argument on appeal.

Father argues that the record does not support the family division's finding that father's progress stagnated.  A change of circumstances may be shown when a parent's ability to care for the child has stagnated.  In re J.G., 2010 VT 61, ¶ 10, 188 Vt. 562 (mem.).  "A finding that a parent has made some progress does not, however, preclude a finding of changed circumstances." In re B.M., 165 Vt. 331, 336 (1996).

Here, the family division found that father's progress had stagnated in that he had made only minimal progress towards his ability to parent A.T.  Father missed the first twenty-one months of A.T.'s life due to his incarceration, and although he had been compliant with several case-plan goals, he missed many opportunities for contact with A.T. once released and had not built a relationship with A.T.  Father argues that he successfully completed many of the action steps in the case plan and this progress indicated that he would continue to improve if provided with more time.

The evidence supports the court's determination that father's progress stagnated.  The court acknowledged that father engaged in counseling, a parenting assessment, and a parenting course.  The court found, however, that he lacked a relationship with A.T. due to his long absence from her early life due to incarceration and failure to consistently engage in contacts with her.  On appeal, "[o]ur role is not to second-guess the family court or to reweigh the evidence." In re S.B., 174 Vt. 427, 429 (2002) (mem.).  The evidence supports the court's determination that his progress in improving his capacity to care for A.T. had stagnated.

Father also argues that the family division erred in evaluating A.T.'s best interests because the court did not consider those interests in a manner to preserve the family, citing one of the purposes of the Juvenile Proceedings Act in 33 V.S.A. § 5101(a)(3).  Contrary to father's assertion, the statutory goal of preserving the family is not the test for termination of parental rights.  The statute provides several goals including providing for children's "care, protection, education, and healthy mental, physical, and social development" and providing timely

permanency for children.  <u>Id</u>. § 5101(a)(1), (4).  To meet these goals, the statute requires the court to consider factors related to the children's best interests prior to termination.  <u>Id</u>. § 5114.  The most important factor is whether the parent will be able to resume parenting duties within a reasonable period of time.  <u>In re J.B.</u>, 167 Vt. 637, 639 (1998) (mem.).  Here, the trial court properly considered the factors and found that father had only just begun establishing a relationship with A.T., that he had not moved beyond unsupervised contact, that A.T. was well adjusted to her foster family and community, and that father would not be able to assume parenting A.T. within a reasonable period given A.T.'s young age and need for permanency.  The family division acted within its discretion in weighing all the factors, and we will not disturb its judgment on appeal.

       <u>Affirmed</u>.


BY THE COURT:


_____
Harold E. Eaton, Jr., Associate Justice


_____
Karen R. Carroll, Associate Justice


_____
William D. Cohen, Associate Justice