# In re Cr.M., C.M. & M.M, Jr., Juveniles

[659 A.2d 1159]

No. 94-131

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed May 12, 1995

*Charles S. Martin* and *Karen Cooper,* Law Clerk, of *Martin & Paolini,* Barre, for Appellant Mother.

*Michael Rose,* St. Albans, for Appellant Father.

*Jeffrey L. Amestoy,* Attorney General, Montpelier, and *Harrison B. Lebowitz,* Assistant Attorney General, Waterbury, for Appellee.

**Allen, C.J.** Mother and father appeal from an order of the Windsor Family Court terminating their residual parental rights and responsibilities to their three children. We affirm.

The Department of Social and Rehabilitation Services (SRS) first became involved with the family in 1991, after receiving a report that 15-day-old M.M., admitted to the hospital for failure to thrive, had been removed from the hospital against medical advice. A short time thereafter, SRS opened a case and offered services to the family after receiving a report that C.M., then age six, had been suffering a life-threatening chronic urinary tract infection due to failure to receive prescribed medication. She was also suffering chronic constipation and was displaying extremely withdrawn behaviors, which were diagnosed as an indication of intense emotional stress.

SRS's efforts to help the family were unsuccessful due to the parents' lack of cooperation and denial of their children's medical problems. A neglect petition was filed in December 1991, and in

January 1992 all three children were adjudicated children in need of care and supervision (CHINS), based on the stipulation of the parties.

The children remained in the home, and the court found that the parents were initially more cooperative in accepting services and working within community support systems available to assist their family. A program of full services was initiated looking toward allowing the children to remain in the home. A central element of the plan was the father's willingness to undergo alcohol screening and treatment.

Two months later, SRS filed an emergency motion to transfer custody of Cr.M., whose medical progress was stifled by profound emotional distress. Based on extensive, stipulated findings about the health and well-being of the child, the court placed Cr.M. with SRS. It also amended the protective supervision order with respect to the other children, prohibiting alcohol consumption in the children's presence and barring contact with the father except under supervision of the mother.

The court approved an amended disposition report providing for weekly visits with Cr.M., under SRS supervision, outpatient alcohol treatment for the father, and individual and family therapy for the mother at a community mental health center in July 1992. Less than one month after the disposition was amended, M.M. was hospitalized for failure to thrive. After M.M. was discharged in August 1992, the parents once again denied his existing medical problems.

That same month, the mother obtained a relief-from-abuse order and separated from the father. The restraining order also prohibited contact between the father and the children. Immediately following the abusive episode, the mother began to demonstrate increasingly psychotic behavior, and voluntarily admitted herself for in-patient psychiatric treatment. At SRS's request and the mother's consent, the court issued an order placing C.M. and M.M. in SRS's custody. The mother remained hospitalized until September, and in October, moved into a community care home. A month later, she moved back home with the father. In October 1992, SRS revised the case plan to delete the goal of reunification. Given the parents' lack of progress and their present crisis situation, SRS recommended that the family undergo a family forensic evaluation so SRS could develop an accurate long-term goal. The State's motion for a family evaluation was granted.

The forensic family evaluation was completed in March 1993 and was followed by case plan reviews for C.M. and M.M. The evaluation

discussed several options, but indicated that permanent placement with the foster parents was the safest option for the children. Based on the evaluation's recommendation and the parents' minimal compliance with the case plan, the State moved to terminate the parents' residual parental rights, alleging that the parents would not be able to resume their parental duties within a reasonable time. Relying on the testimony of the SRS case worker, a physician, the foster mother of M.M., and the therapists for C.M. and M.M., the court granted the State's motion, finding that there had been stagnation and deterioration of both parents' ability to care for and parent the children. The court referred specifically to the father's "serious drinking problem which he has been unable to modify reliably, and which causes violent episodes between himself and other family members." The court added:

> As to the mother, her mental disorder and her psychotic episodes have been treated only intermittently. Given her extreme dependence on [the father], her mental illness profoundly affects her ability to adequately protect the children from the effects of their father's alcoholism, poor parental judgment, and propensity [for] violence. There is no indication that either parent has the potential in the near future to improve their parenting skills, or to modify or remedy their behavior or lifestyle in order to become a responsible parent to the children.

The present appeals followed.

## I. Mother's Appeal

When a court considers terminating parental rights under 33 V.S.A. § 5532(a) it must conduct a two-step analysis: first, the court must find whether there has been a substantial change in material circumstances; second, it must decide whether the best interests of the child require termination of parental rights. *In re J.R.,* 153 Vt. 85, 99-100, 570 A.2d 154, 161 (1989). A substantial change in material circumstances is "most often found when the parent's ability to care properly for the child has either stagnated or deteriorated over the passage of time." *In re H.A.,* 153 Vt. 504, 515, 572 A.2d 884, 890, *cert. denied,* 498 U.S. 861 (1990). Stagnation may be shown "by the passage of time with no improvement in parental capacity to care properly for the child." *In re J.R.,* 153 Vt. at 99, 570 A.2d at 161. If the court decides to terminate parental rights, its findings must be

supported by clear and convincing evidence, and they will withstand review in this Court unless they are clearly erroneous. *In re S.R.*, 157 Vt. 417, 421, 599 A.2d 364, 367 (1991).

■ The mother challenges only the court's finding of stagnation. Her main argument — essentially her only argument — is that the case plans were not reasonably calculated to render her a fit parent because they did not adequately address her needs as a battered woman or ensure her escape from her husband's abuse. She contends that her own parenting problems, the family dysfunction, and the threats to the health and well-being of the children, none of which she denies, all stemmed from the father's violent behavior. In support of her theory, she devotes much attention to explaining the dynamics of the battered woman's syndrome, the concomitant problem of "learned helplessness," and the need for maximum support once the battered spouse has left the batterer. Thus, she asserts:

> That SRS's offer of services was refused was a typical response from a battered woman and one that SRS could have anticipated. Under the circumstances, SRS should have taken stronger measures to help her escape and to resist the compulsion to return to the abusive environment.

The State objects to our consideration of the battered woman's syndrome, because that subject was not raised below. See *In re M.M.*, 159 Vt. 41, 44, 613 A.2d 713, 715 (1992) (failure to raise arguments below amounts to a waiver). We agree. The time to present this argument and evidence was at the termination proceedings or the disposition hearings. The court reviewed SRS's plans of services and adopted the case plans for reunification based on the consent of all parties. The mother never challenged the dispositions and stipulated to the case plans she now challenges as inadequate. Because the mother was represented by counsel at all stages and has never raised a claim of ineffective assistance of counsel, she should be bound by her stipulations. See *In re J.H.*, 156 Vt. 66, 71, 587 A.2d 1009, 1012 (1991) (mother bound to stipulation giving custody to SRS that was made at initial disposition hearing).

■ Additionally, the court's findings strongly confirm that SRS's case plans recognized the mother's victimization, attempted to safeguard her rights, and maximized her chances of resuming the parental role. The plans provided for SRS support and monitoring, ongoing medical exams, individual and family mental health counsel-

ing, and assistance from a local family services agency, including temporary housing and abuse counseling. The record also indicates that SRS responded immediately to the mother's changing needs following the August 1992 battering episode and supported her recovery efforts through the fall. There is strong support in the record for these findings, and the mother's argument that the SRS case plan did not address her needs is without merit.

Moveover, the plans' lack of success did not mean that they were unreasonable. See *People in Interest of L.G.*, 737 P.2d 431, 434 (Colo. Ct. App. 1987) (fact that agency personnel could not improve mother's ability to parent child and that treatment plan failed did not mean plan was inappropriate). The court found that:

32. [The mother] has been offered other supportive services, including those of the New Beginnings Support Network and Adult Protective Services, since her disclosure in August, 1992 that she had been recently abused by [the father], and had also suffered severe abuse in the past. [The mother] refused all services and has recanted the statements she made regarding abuse by her husband. The court finds that [the mother] has been abused in the past, and that her renunciation of the abuse, her inability to protect herself from her husband's violent behavior, and her unwillingness to seek assistance are strongly indicative of her inability to protect her children.

The court added that "neither parent was willing to accept homemaking or child care services, and that neither parent was willing to accept employment counseling." The court also found that the mother's progress was hindered by her recurring psychotic episodes and an untreated mental disorder. There is ample evidence to support these findings. Therefore, the court's conclusion that there was a substantial change in circumstances based on stagnation is not erroneous.

Finally, the mother may not challenge the court's decision by assigning primary blame for the family's dysfunction to the father. It may well be that one parent contributes more to the family's breakdown than the other parent, but the controlling standard under 33 V.S.A. § 5532(a) is the best interests of the child, not the fault of the parent. See *In re Bishop*, 521 N.E.2d 838, 840 (Ohio Ct. App. 1987). The mother's shortcomings, even if a product of the father's

abuse, were fairly considered by the court in determining whether a substantial change in circumstances had occurred in terms of her individual ability to parent her children and whether termination was in the best interest of the children. See *In re M.M.*, 159 Vt. 517, 524, 621 A.2d 1276, 1281 (1993) (Although sympathetic with mother's challenge, "we are compelled to elevate the best interests of the dependent child above the mother's interests when the mother has made insufficient progress in parenting skills, and when her ability to act independently is many months away.").

In sum, the court's findings provide clear and convincing support for its conclusions that the mother was unable to resume her parenting duties within a reasonable period of time and that the termination of her parental rights and responsibilities was proper.

## II. Father's Appeal

Father does not challenge the family court's findings of fact or conclusion that there was a substantial change in circumstances supporting the SRS petition to terminate parental rights. Rather, he argues that the court had a duty under 33 V.S.A. § 5532(a) to treat the issue of visitation separately from the issue of termination of parental rights and responsibilities and to make a separate finding by clear and convincing evidence that visitation should be denied.

As we pointed out in *In re L.A.*, 154 Vt. 147, 160, 574 A.2d 782, 789 (1990), "[s]ince visitation is a residual parental right, the termination of such rights necessarily eliminates the parent's right to visit the child. Indeed, we cannot see how a child can start a new life with a new family if the former parents retain visitation rights." See also *In re M.B.*, 162 Vt. 229, 239, 647 A.2d 1001, 1007, *cert. denied*, — U.S. —, 115 S. Ct. 519 (1994) ("As a matter of law . . . a termination of parental rights applies to all parental rights, including visitation.").

*Affirmed.*