*Note:  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2013-124

JULY TERM, 2013

In re S.S., A.S. and L.S., Juveniles

} APPEALED FROM:
}
} Superior Court, Bennington Unit,
} Family Division
}
} DOCKET NO. 73/74/75-9-10 Bnjv

Trial Judge: David A. Howard

In the above-entitled cause, the Clerk will enter:

Father appeals the termination of his parental rights with respect to his three daughters. We affirm.

The children were born in October 2007, November 2008, and August 2010.  The children and their parents were living in the home of the paternal grandparents when, in the spring of 2010, father was charged with aggravated domestic assault based on an incident in which he threatened to kill himself and everyone in the house.  Father pleaded guilty to the charge and was given a thirty-day-to-four-year sentence.  In September 2010, while father was incarcerated, the Department for Children and Families (DCF) filed a petition alleging that the children were in need of care and supervision (CHINS) due to neglect of their basic needs, including sufficient food.  Based on the mother's admissions, the children were adjudicated CHINS in November 2010.  The court approved a reunification plan at disposition and ordered that the children remain in DCF custody.  Much of the DCF planning focused on the mother as the primary care provider, but ultimately she was unable to deal with the children, despite having access to intensive services at the Lund Home.

Father served eleven months of his sentence before he was released.  Upon his release, he reunited with the mother and had contact with the children.  DCF began a plan to reunify the children with father as the primary care provider because he appeared to be making progress with employment and parenting, although he and the mother were living together in a motel and the children remained in foster care.  In October 2011, shortly before a planned transfer of the children's legal custody from DCF to father, father was arrested on charges of felony domestic assault and felony domestic assault with a weapon based on an incident in which he threatened the mother with a knife.  He was held without bail, and in December 2011, he pleaded guilty to a

felony count of domestic assault and received a sentence of sixteen to thirty-six months. After father was incarcerated, DCF once again shifted its reunification efforts to the mother. The mother, however, became involved in an abusive relationship that was not conducive to her obtaining custody of the children.

In prison, father had a great deal of difficulty with the domestic-assault program because of his refusal to take responsibility for his actions. He was denied early release in 2012 due to the nature of his convictions and his lack of effort with the program. At the end of 2012, he overcame these difficulties and completed the program.

Meanwhile, in September 2012, DCF sought termination of the parents' residual parental rights. The termination hearing was held in February 2013, just days after father's release on furlough from prison. Following the hearing, the superior court terminated both the mother's and father's parental rights. The mother did not appeal the decision. Father appeals, arguing that: (1) the evidence does not support either a threshold showing of stagnation or the court's best-interests determination; (2) terminating his parental rights is premature because of the absence of an adoptive home for the children; and (3) the court's termination decision was based on a mere guess that father would violate the terms of his release and be unavailable to the children again in the future. The State has filed a brief in support of the superior court's decision, and the children's attorney has filed a statement asking this Court to uphold the superior court's decision.

Before terminating parental rights, the court must first find that there has been a substantial change of material circumstances since the initial disposition order and, if so, must then conclude that the best interests of the children, considering the statutory criteria, require termination of parental rights. In re Cr. M., 163 Vt. 542, 545-46 (1995). A substantial change of circumstances most often results when the parents' ability to care for their children either stagnates of deteriorates over time. Id. Here, father argues that he has always had good parenting skills and that they have not stagnated over time, as evidenced by his successful completion of prison programs. Father notes that the court made no specific finding concerning stagnation but does not appear to challenge its change-of-circumstances conclusion on that basis. In any event, this Court will uphold a termination decision even when there is no explicit finding of a substantial change in circumstances when "it is evident from the record that a substantial change of material circumstances had occurred since the initial disposition order." In re K.F., 2004 VT 40, ¶ 9, 176 Vt. 636 (mem.).

In this case, stagnation is manifestly evident from the record. When the CHINS proceedings commenced in September 2010, father was serving a sentence for domestic assault and playing no meaningful role in the children's lives. Two years later, when DCF filed its termination petition, father was again serving a sentence for a second domestic assault and thus playing no role in the children's lives. At the time of the termination hearing in February 2013, father had just been released on furlough with significant restrictions affecting his ability to care

2

for his children.  As the court stated in its decision, father was in no better, and perhaps worse, position to care for the children than over two years earlier when the children were taken into custody.  The required threshold showing of changed circumstances due to stagnation was plainly met here.

The record also amply supports the court's conclusion that the children's best interests compel termination here.  The court found that the children had adjusted to foster care and that father had not played a constructive role in their lives because of his absence most of their lives due to his incarceration for domestic assault.  Although, as the court noted, father has expressed love for his children, he bears sole responsibility for the effect of his incarceration resulting from his voluntary criminal acts.  See id. ¶ 12.  The court stated that father's absence alone would not compel termination of his parental rights, but that, under the circumstances, father would most likely not be able to resume his parental duties within a reasonable period of time from the perspective of the children.  As the court noted, the children have spent most of their young lives apart from their parents, and the evidence indicated that they are in need of stability and permanence.  The evidence demonstrated significant uncertainty as to when father would be able to resume his parental duties, even though he had been essentially out his young children's lives for most of the previous twenty-eight months.

Father complains that part of the court's rational for concluding that he would not be able to resume parental duties within a reasonable period of time was based on its "guess" that he would reoffend and once again be unavailable to the children.  Father asserts that a termination decision cannot be based on a guess.  In making this argument, father relies upon the court's statement that it "would only be hopefully guessing that he will avoid future trouble when looking at what his history of being able to put his children's interests first is." The court noted that father had twice been unable to control violent tendencies that resulted in him being imprisoned and unavailable to his children.  The court further noted that father had had the benefit of programs in prison the first time, and yet committed a second domestic assault on the eve of successfully obtaining custody of his children.  The court commented that if getting his children back in the next few days was not motivation enough for him to control himself, it could not imagine what would be.  While consideration of the critical reasonable-period-of-time factor is "forward-looking," see In re B.M., 165 Vt. 331, 337 (1996), the court may consider a parent's past actions in gauging the likelihood of the parent being able to resume parental duties within a reasonable period of time from the perspective of the child.  That is what the court did here.   See In re J.B., 167 Vt. 637, 640 (1998) (mem.) (stating that although "past conduct itself is no barrier to resuming parental responsibilities," court could consider extent of mother's past behavioral problems and lack of certainty about her progress in overcoming those problems in determining whether she would be able to resume parental duties within reasonable period of time).

Father also argues that the court's termination decision is premature given that DCF had been looking for two years but had not found an adoptive home for the children.  The testimony at the termination hearing was that DCF had located a family that was a "good possibility" for

adoption. In any event, we have repeatedly stated that the absence of a prospective adoptive home is not a prerequisite to terminating parental rights when the statutory best-interests criteria are met. See In re S.B., 174 Vt. 427, 430 (2002) (mem.) ("[W]e have repeatedly stated 'that a valid termination of parental rights does not depend on the availability of permanent foster care or adoption.' " (quoting In re D.M., 162 Vt. 33, 40 (1994))); In E.B., 158 Vt. 8, 15 (1992) ("[T]ermination of residual parental rights does not depend on the existence of an alternative placement").

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Brian L. Burgess, Associate Justice

4