*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

<u>**ENTRY ORDER**</u>

SUPREME COURT DOCKET NO. 2013-265

DECEMBER TERM, 2013

| | |
|---|---|
| In re C.C., S.C. & A.C., Juveniles | }     APPEALED FROM: |

In re C.C., S.C. & A.C., Juveniles         }      APPEALED FROM:
                                                }
                                                }      Superior Court, Washington Unit,
                                                }      Family Division
                                                }
                                                }      DOCKET NO. 97/98/99-7-10 Wnjv

Trial Judge: Thomas J. Devine

In the above-entitled cause, the Clerk will enter:

Father appeals the termination of his parental rights with respect to his three children. We affirm.

The children, C.C., S.C., and A.C., were born in February 2008, February 2006, and April 2010, respectively. They have been in the custody of the Department for Children and Families (DCF) since July 2010. That same month, C.C. and her older half-sibling, who is not a subject of these proceedings, were placed in the care of their current foster parents. The younger two children were placed with the same foster family in September 2010. In the fall of 2010, all three children were found to be children in need of care or supervision (CHINS), and the superior court entered a disposition order continuing DCF custody and approving a case plan with concurrent goals of reunification and adoption.

In January 2011, DCF filed a petition seeking to terminate parental rights with respect to all four children. In January 2012, following three days of hearings held in late 2011, the superior court granted DCF's petition with respect to the mother, but denied the petition with respect to father, concluding that DCF had failed to establish stagnation on his part by clear and convincing evidence. The court stated that, going forward, father would "need to work diligently to satisfy the necessary requirements under the case plan," and that DCF would need to provide father "with the opportunity to take the necessary steps to be reunified, including the ability to work with the children's counselors and assistance with housing."

Following the court's order, the superior court adopted DCF's revised case plan. The objectives in the plan included expectations that father would continue to attend Family Time coaching to develop skills and show understanding of age appropriate developmental needs and how to have a quality time with all three children while setting clear and consistent boundaries; attend and complete a recommended parenting group; understand and provide for each of the children's needs during family time; continue to attend weekly individual counseling; find stable, independent and safe housing by April 15, 2012, and access and find alternative transportation to transport the children to medical, dental and counseling appointments.

In May 2012, DCF again filed a petition asking that father's parental rights be terminated. In a June 10, 2013 decision, following three days of hearings in the fall of 2012, the superior court granted DCF's petition. After finding stagnation in father's progress toward assuming the responsibilities of parenting, the superior court considered the factors relevant to the children's best interests. Their relationships with others, including their parents, is the subject of two of the four best-interest factors set forth in 33 V.S.A. § 5114(a). The first factor concerns the interaction and interrelationship of the children with their natural parents, foster parents, siblings, and other persons who may significantly affect their best interests. Id. § 5114(a)(1). With regard to this factor, the court found that: (1) the children and father love each other; (2) father and the children have had some successful visits with each other during the time that the children have been in DCF custody; (3) father's success with the children has occurred "when he has small, manageable periods of time with them rather than extended time"; (4) when his time with the children increased, "the children have experienced significant emotional and behavioral issues, both at home and at school"; and (5) the children have developed close bonds with their foster family. The court concluded that, on balance, this factor favored granting the State's petition.

Regarding the second factor, which concerns the children's adjustment to their home, school, and community, see id. § 5114(a)(2), the court found that: (1) the children had lived with the same foster family for over two and one-half years, a significant portion of their lives; (2) when they were first placed with the foster family, they each had significant medical, dental, and emotional health issues; (3) the foster parents have patiently worked with the children to overcome these issues, and the children made significant progress until they regressed when visitations were increased with father; and (4) the foster family has demonstrated extraordinary commitment to the children. The court found that this factor weighed in favor of termination.

Regarding the third and most important factor, which pertains to the likelihood that the parent will be able to resume parental duties within a reasonable period of time, id. § 5114(a)(3), the court found that: (1) although father had made some progress, he still struggled to parent the children effectively despite the significant amount of time that had passed since the children were placed in DCF custody and the substantial services provided to him; (2) father had not made adequate efforts to learn about the children's emotional needs; (3) father had not completed the parent education program; (4) father continued to lack transportation and stable housing; and (5) from the perspective of the children, father would be unable to resume his parental duties within a reasonable period of time, given the children's significant needs and their anxiety and confusion about the lack of clarity in their living situation. The court found that this factor weighed in favor of granting the State's petition.

The fourth factor, which also implicates father's relationship with his children, is whether the natural parents have played, and continue to play, a constructive role in the children's lives, including personal contact and demonstrated emotional support for the children's welfare. Id. § 5114(a)(4). Regarding this factor, the court found that: (1) father loves the children; (2) he has maintained regular, though not expansive, personal contact with them; (3) he has tried to play a constructive role in their lives, but has struggled to provide emotional support; (4) his continued insistence on airing with the children his personal grievances with the foster parents and DCF has caused them distress; and (5) father has expressed little interest in the work being done by the children's therapists. All in all, the court described the impact of this factor as "mixed."

On appeal, father does not challenge the court's finding of stagnation. See In re Cr. M., 163 Vt. 542, 545-46 (1995) (noting that, in considering petition to terminate parental rights, court must first determine whether there has been substantial change in material circumstances, most often due to stagnation in parent's ability to care for child, and, if so, whether child's best interests require termination of parental rights). With respect to the best interests analysis, father argues that: (1) the court's findings regarding the adverse effects of contact between him and the children are clearly erroneous; (2) the court's recitation of testimony of C.C.'s therapist cannot be considered a finding of fact; and (3) the issue of whether it was worth preserving the bonds between father and the children was left unresolved despite ample evidence from which the court could have made such a determination. In particular, noting that "in some cases a loving parental bond will override other factors in determining whether termination of parental rights is the appropriate remedy," In re J.F., 2006 VT 45, ¶ 13, 180 Vt. 583 (mem.), father argues that the superior court's findings regarding the bond between him and the children, to the limited extent that they were made, misapprehended the evidence and failed to resolve the issue of whether those bonds are worth preserving.

We disagree. The court in fact acknowledged that father and the children had a loving relationship, that father had maintained regular, if not extended, contact with the children, and that he had had some positive interactions with the children during his visits with them. But the court determined, based on the evidence submitted at the termination hearing, that his relationship with the children was not constructive overall and in fact had caused them distress, which interrupted the progress that they had made in foster care. The court's conclusion on this point is supported by sufficient evidence. The child's pediatrician, whose testimony the court credited, testified that it would be a "gargantuan task" for anybody, let alone father, to meet the special needs of these children, given their significant emotional and behavioral issues, and that it would be harmful to the children to disrupt the attachments that they had developed with the foster family. The court also credited the testimony of the children's pediatrician and therapists that the expansion of visitations with father in early 2012 appeared to have been a catalyst for a dramatic regression in their behavior and well-being.

Moreover, we cannot agree that the court's findings regarding the adverse impact father's visits had on the children were clearly erroneous. The finding was supported by the testimony of the children's pediatrician and two of their counselors. Father faults the court for merely reciting the testimony of one of the children's therapists that she had not seen signs of a bond between father and the children. See Krupp v. Krupp, 126 Vt. 511, 514 (1967) ("A recitation of evidence in findings is not a finding of the facts contained in the testimony related and it cannot be so construed."). However, after describing that therapist's testimony, the court made a finding in its own right that "when father's time with the children has been expanded, the children have experienced significant emotional and behavioral issues, both at home and at school." The court's decision here was not based on mere recitation of testimony.

In short, there was substantial evidence that despite his love for his children, as well as their demonstrated affection for him, father was not yet capable of parenting these children who had spent much of their lives in DCF custody with the same foster family. The children had an immediate need for stability and permanence in their lives in order to overcome medical and emotional challenges. As required, the court weighed the quality of the relationship between father and the children in the context of the statutory best-interest factors, which it concluded favored termination of father's residual parental rights. We find ample support in the record for that decision, notwithstanding that father loves his children and has maintained contact with

3

them.  See <u>In re M.B.</u>, 162 Vt. 229, 238 (1994) ("Public policy . . . does not dictate that the parent-child bond be maintained regardless of the cost to the child; [statutory law] recognizes that severance of that bond may be in the child's best interest.").

<u>Affirmed</u>.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
Beth Robinson, Associate Justice


_____
Geoffrey W. Crawford, Associate Justice