*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2016-076

JULY TERM, 2016

| | |
|---|---|
| In re C.W. and K.Z., Juveniles | } APPEALED FROM: |
| | } |
| | } Superior Court, Addison Unit, |
| | } Family Division |
| | } |
| | } DOCKET NO. 37/38-5-13 Anjv |
| | |
| | Trial Judge: Amy M. Davenport (Ret.), |
| | Specially Assigned |

In the above-entitled cause, the Clerk will enter:

Mother appeals termination of her parental rights to her children K.Z. and C.W., born in October 2004 and October 2011, respectively. On appeal, mother argues that the trial court erred in finding that mother was primarily to blame for the distrust between her and the Department for Children and Families (DCF), what she calls the circumstance central to the inadequate progress she made in the case. C.W.'s father[1] also appeals the order terminating his parental rights to C.W. Father argues that the evidence does not support the court's findings that there was a change of circumstances or that termination was in C.W.'s best interests. We affirm.

The children came into DCF custody in May 2013. At the time, mother was the primary-care provider for these two children and their older sibling. The family was homeless, and the two older children had not been enrolled in school since March 2013. C.W.'s father had been sent to jail for domestic assault involving mother in August 2012. The parties stipulated that the children were in need of care or supervision (CHINS) in October 2013. The case plan contemplated reunification with mother and required mother to obtain mental-health counseling, secure stable housing, cease contact with father due to the domestic violence, enroll in a parenting program, attend to the children's emotional, physical, and developmental needs, and meet with providers and DCF. From the outset, mother's relationship with DCF "was characterized by a lack of trust and an unwillingness to share information." Mother had consistent visits with the children, but she was emotional and defensive during pre- and post-visit meetings, did not accept suggestions, and was combative. As a result, the family-time coaching was suspended. After mother obtained stable housing, overnight visits began in December 2013. These visits ceased, however, when, based on an outstanding warrant for past behavior, mother was incarcerated from July to August 2014. DCF moved to terminate, and the court denied the motion in February 2015. The court noted that there was a strong bond between mother and the children, and that prior to mother's incarceration, she had made significant progress towards reunification. The court concluded that

---

[1] K.Z.'s father did not appeal the termination order. Throughout the decision father is used to refer to C.W.'s father.

termination was not supported by clear and convincing evidence, but told mother she had to learn to work cooperatively with DCF and to allow DCF workers to speak to her counselors.

Following the first termination hearing, mother made progress on some case-plan goals. Mother obtained stable housing and began some counseling. In other important areas, mother failed to make progress. Although mother signed a release that allowed DCF to communicate with her counselor, it was limited to attendance. Mother did not enroll in a parenting program, and she continued to have contact with father. Mother attended visits, but there were numerous issues due to mother's lack of cooperation. Mother was adversarial with all who attempted to give her direction, including DCF, Easter Seals, and the foster parents. DCF moved to terminate a second time.

Following a contested hearing, the court found that there was a change of circumstances as to mother, explaining that mother's behavior since the first termination hearing had become more volatile and hostile and that she had not made progress on her ability to parent. Easter Seals, DCF, and the foster parents made repeated attempts to work cooperatively with mother, but mother was adversarial, not able to take direction, and defensive. The court credited the findings of a court-ordered evaluation of mother, which found that DCF had attempted to work with mother, but mother's personality was such that she saw herself as a victim, failed to take personal responsibility for her actions, and acted unpredictably. The court found father's lack of progress also amounted to a change of circumstances. Father had recently completed treatment for opiate addiction, had not engaged in domestic violence counseling or taken a parenting class, and had not progressed to unsupervised visits. The court found that neither mother nor father could meet the mental, emotional, and physical needs of the children, especially given the children's need for stability, and concluded that termination was in the children's best interests. Mother and father have filed separate appeals.

To terminate parental rights, the court must conduct a two-step analysis. "The court must first find that there has been a substantial change in material circumstances; second, the court must find that termination of parental rights is in the child's best interests." In re S.W., 2003 VT 90, ¶ 4, 176 Vt. 517 (mem.). A change of circumstances may be demonstrated where "a parent's ability to care for a child has either stagnated or deteriorated over the passage of time." Id. (quotation omitted). We will uphold the court's findings if supported by the evidence. In re C.P., 2012 VT 100, ¶ 30, 193 Vt. 29.

On appeal, mother argues that the court erred in finding that mother bore greater responsibility for the distrust between her and DCF and that her lack of progress was therefore due to factors beyond her control.

We conclude that there was ample evidence to support the court's findings. Contrary to mother's assertion, the court did acknowledge that mother was not solely responsible for the mistrust she had of DCF. The court nonetheless found based on the evidence that mother's "reactive, oppositional behavior was more responsible for both starting the war and keeping the fires burning." The facts support this finding. The evidence presented at trial included numerous instances in which mother displayed distrust and a lack of cooperation with service providers. The court found that, mother's "volatility and her unwillingness to take direction from either Easter Seals staff or DCF has significantly deteriorated to the point that Easter Seals had to withdraw their services." Mother did not participate in a school meeting about her child's education plan because she was busy completing and handing out to the other meeting participants, including DCF and school personnel, 'violation forms' she claimed to have obtained from the FBI. The forms alleged violations of her rights. The court wrote, "How this behavior could possibly serve

K.Z.'s interests is beyond comprehension." The court-ordered evaluation concluded that mother had become more entrenched in her view that the agencies working with her were malicious and deceitful and that she failed to take personal responsibility for her situation. It was well within the court's province as factfinder to credit this evidence and find that mother bore primary responsibility for the deterioration of her relationship with DCF.

Most important, the evidence supports the court's finding that mother's lack of progress was caused by her own actions, because it was her lack of insight and resistance to coaching that prevented her from making improvements in her parenting skills. The court-ordered evaluation explained that mother's lack of insight and inability to take personal responsibility significantly impaired her ability to provide the understanding, empathy, and patience needed to parent both children—C.W., who had lived for more than half her life in DCF custody, would require particular sensitivity to make any transition in care, and K.Z., who was on the autism spectrum, needed unusually high levels of empathy and patience. The court credited this evidence and other evidence to concluding that mother would not be able to resume parenting within a reasonable period of time.

Next, we turn to father's appeal. Father argues that the evidence does not support the court's findings that father's progress had stagnated. Stagnation is typically shown when a parent shows no improvement towards resuming parental responsibilities. In re J.G., 2010 VT 61, ¶ 10, 188 Vt. 562. Even where there is some generalized improvement in parenting skills, stagnation may still occur if the parent has not made progress on ameliorating the conditions that led to state intervention. See In re D.B., 161 Vt. 217, 220 (1993).

Here, the court found that, although father had consistently attended visits, his progress had stagnated because he had not progressed to unsupervised visits, had not completed a domestic-violence treatment program, and had only recently begun to address his opiate addiction.[2] Father claims that his lack of unsupervised visits was a circumstance beyond his control and due to DCF's unreasonable decision. The evidence supports the court's finding that father's lack of progress was a matter within his control. Given father had not been the custodial parent and father's history of domestic violence, DCF's decision regarding unsupervised visitation was reasonable insofar as father lacked a strong bond with his child, had not completed a parenting class, and had not engaged in domestic violence programming. These facts alone are sufficient to show a change of circumstances due to stagnation.[3]

---

[2] Father claims that the court erred in failing to credit him for addressing his opiate addiction and instead counted it against him both in its analysis of changed circumstances and in assessing C.W.'s best-interests. There was no error. The court acknowledged father's progress in this area, but also noted that father's sobriety was just beginning and more time was required to address his addiction. In any event, even excluding evidence regarding father's addiction, the remaining findings demonstrate that father's progress in improving his parenting skills had stagnated and that he would not be able to resume parenting within a reasonable period of time.

[3] We also reject father's assertion that his failure to complete a domestic-violence program was due to the lack of a referral from DCF and therefore a circumstance beyond his control. The court's findings indicate that father was engaged in a domestic-violence program when he was incarcerated, but father failed to finish. There is no evidence that father's failure to complete that program was a result of DCF's action, or that upon release father was unable to find a different program due to DCF's lack of referral.

Father also asserts that the court's findings that he did not have a constructive relationship with C.W. and that he would not be able to resume parenting within a reasonable period of time are not supported by the evidence. The court may terminate parental rights if the court finds by clear and convincing evidence that termination is in the child's best interests. In re J.T., 166 Vt. 173, 177 (1997). In assessing the child's best interests, the court must consider the statutory criteria. 33 V.S.A. § 5114. The most important factor is whether the parent will be able to resume parenting duties within a reasonable period of time. In re J.B., 167 Vt. 637, 639, (1998) (mem.).

As to the court's finding that he could not resume parenting in a reasonable period of time, father raises numerous challenges, including claims that the evidence was too thin and, because the court failed to define a reasonable time from C.W.'s perspective, relied on only the negative evidence from the court-ordered evaluation, and that it failed to show how his addiction impacted his parenting. He also asserts that his relationship with C.W. was constructive.

We have considered all of father's arguments and conclude that there was no error. Although the court did not make an explicit finding on what a reasonable period of time would be from C.W.'s perspective, the entirety of the findings demonstrate that father would not be able to parent within a reasonable period of time. The court found that C.W. has anxiety and needs an environment where she feels loved. C.W. had been in foster care for almost three years and has a strong bond with her foster parents. Father has never been the primary parent, had not completed a parenting class, was unemployed, and lacked appropriate housing. Moreover, the court-ordered evaluation, which the court credited, found that father was not able to meet C.W.'s needs. Finally, father had not addressed his past violent behavior. Given her young age, her long time in custody, her need for permanency, and father's need for additional time to learn parenting skills, deal with his domestic violence, and find employment and housing, the evidence supports the court's finding that father would not be able to assume parenting C.W. within a reasonable period of time. This evidence also supports the court's finding that father did not play a constructive role in C.W.'s life.

Finally, father lists several of the court's findings that he claims lack support in the record. In juvenile proceedings, unsupported findings do not require reversal as long as the remainder of the supported findings are sufficient to sustain the decision. In re D.D., 2013 VT 79, ¶ 34, 194 Vt. 508. Here, we conclude that none of the challenged findings were critical to the court's conclusions and even if in error do not require reversal.

Affirmed.

BY THE COURT:

_____
John A. Dooley, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice

4